**UNITED STATES of America**

v.

**Ralph GINZBURG, Documentary Books, Inc., Eros Magazine, Inc., Liaison News Letter, Inc.,**

**Ralph Ginzburg, Appellant.**

**No. 16028.**

United States Court of Appeals Third Circuit.

Argued Sept. 13, 1966.

Decided March 12, 1967.

Reargued Nov. 28, 1967.

Decided July 3, 1968.

Harold E. Kohn, Dilworth, Paxson, Kalish, Kohn & Levy, Philadelphia, Pa., for appellant.

J. Shane Creamer, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

OPINION ON REHEARING

Before STALEY, Chief Judge, and GERALD McLAUGHLIN, KALODNER, HASTIE, FREEDMAN, SEITZ and VAN DUSEN, Circuit Judges.

KALODNER, Circuit Judge.

Did the District Court abuse its discretion in failing to accord a requested hearing to the appellant on his petition for reconsideration of sentence, (1) in the light of the reasons assigned by the Supreme Court of the United States for its affirmance of the judgment of conviction, and (2) the factual allegations of the petition for reconsideration relating thereto?

We are required, on this appeal, to decide this question only, and accordingly

do not reach other contentions advanced by the appellant and the *amici·curiae*.[1]

Discussion of the question stated must be prefaced by this statement of its factual background:

In June 1963, the District Court, to whom the case was tried without a jury, found the appellant Ralph Ginzburg, and three corporations which he controlled, guilty upon 28 counts of an Indictment charging violation of the federal obscenity statute, 18 U.S.C.A. § 1461.[2] Counts 1 through 10 of the Indictment charged Ginzburg, and the particular corporate defendant named therein, with using the mails for the delivery of "nonmailable matter", consisting of promotional advertising literature, informing how and where a designated alleged obscene publication could be obtained. Counts 11 through 28, charged Ginzburg, and the particular corporate defendant named therein, with using the mails for the delivery of a designated "non-mailable" obscene publication. The publications concerned were "The Housewife's Handbook on Selective Promiscuity" ("Handbook"); "Eros", a magazine, and "Liaison", a biweekly newsletter.

Following the District Court's denial of the defendants' motions for Arrest of Judgment and, in the alternative, for a new trial, 224 F.Supp. 129 (E.D.Pa. 1963), and its subsequent imposition of a 5-year prison sentence and $28,000 fine as to Ginzburg, and fines aggregating $14,000 imposed on the corporate defendants, the defendants appealed. We af-

firmed at 338 F.2d 12 (3 Cir. 1964), and the Supreme Court of the United States did likewise at 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), rehearing denied, 384 U.S. 934, 86 S.Ct. 1440, 16 L.Ed.2d 536.

Ginzburg, thereafter, filed a petition for reconsideration of sentence in the District Court in which he prayed for (1) vacation, suspension or reduction of his sentence of imprisonment, and (2) a hearing at which he could present evidence in support of the petition. The Government, in its "Response" to the petition, did not deny any of its factual averments, and with respect to the petitioner's request for a hearing stated "it would seem appropriate that an opportunity to be heard be afforded", and "[a]ccordingly, the Government does not oppose the defendant's request for a hearing on the merits of his petition". The Government, in its Response, further stated that "it takes no position on that part of the defendant's motion which pertains to reduction of his sentence", and "[i]nsofar as defendant's motion papers request this Court to vacate or suspend his sentence, the Government respectfully urges this Court to deny the petition".

The District Court subsequently, without hearing, entered an Order denying the petition, and Ginzburg appealed. We affirmed, by a divided court, and thereafter granted rehearing by the court *en banc.*

1. The American Civil Liberties Union, Greater Philadelphia Branch; and Ernest Angell, Jefferson B. Fordham, Irwin Karp, Horace S. Manges, Harriet Pilpel, Dean Louis H. Pollak, Whitney North Seymour, Harrison Tweed and Bethuel M. Webster

2. The Federal Obscenity Statute provides in pertinent part:
    "Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; and—
    \*    \*    \*    \*    \*
    "Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, or

how, or from whom, or by what means any of such mentioned matters \* \* \* may be obtained \* \* \*.
    \*    \*    \*    \*    \*
    "Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.
    "Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable \* \* \* shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense \* \* \*."

What has been said brings us to the petition for reconsideration and the contentions with respect to it presented here.

Ginzburg's petition for reconsideration of sentence may be summarized as follows:

(1) The District Court found him guilty of violating the obscenity statute on its view that Handbook, Eros and Liaison were obscene *per se,* and its fact-findings that the "defendants" unsuccessfully sought Blue Ball, Pennsylvania and Intercourse, Pennsylvania, mailing addresses, and finally arranged the Middlesex, New Jersey mailing address, "in order that the postmarks on mailed material would further defendants' general scheme and purpose".

(2) The Supreme Court of the United States affirmed his conviction "because of the manner in which the publications had been advertised", and not on the ground that they were obscene *per se,* and "this basis for the Supreme Court's decision was new and unprecedented and a departure from pre-existing law, which had looked to the publications themselves in order to determine obscenity".

(3) Ginzburg had been advised by his trial counsel that the use of the mails for his publications "was lawful", and "[b]ecause of the state of the law as it existed prior to the Supreme Court's decision", his counsel did not consider the mail applications to the various post offices "to be material", and for that reason did not have Ginzburg testify to the fact that he "had absolutely no part whatsoever and no *mens rea* in those Post Office applications".

(4) Ginzburg is "a first offender"; he "always has been a law-abiding hard-working member of the community"; he supports his wife and three children, widowed mother and blind sister; his [then] 12-year old daughter has been under psychiatric care since shortly after his sentencing and his imprisonment "will have a serious adverse effect on the child's mental health"; "he is a responsible and respected member of the publishing profession"; "[h]e does not intend to and will not republish or redistribute the material which led to his conviction or any material of the same sort"; and, finally, he will adduce testimony in support of his factual allegations at a hearing on his petition for reconsideration of sentence.

On this appeal, Ginzburg contends that the District Court abused its discretion (1) in denying him a hearing on his petition for reconsideration; (2) in "arbitrarily and without reason" refusing to change his sentence; and (3) in refusing to make available to him the contents of the pre-sentence report received by the District Court prior to the imposition of his sentence.

The Government, in reply, urges that the District Court did not abuse its discretion in denying a hearing on the reconsideration petition and in denying the petition on its merits; and, further, that the District Court did not, in refusing inspection of the pre-sentence report, abuse the limits of its permissible discretion under Rule 32(c) of the Federal Rules of Criminal Procedure, assuming the rule to be applicable to a reconsideration of sentence proceeding.

As earlier stated, we will limit our present disposition to the single question as to whether the District Court abused its discretion in failing to accord the requested hearing to Ginzburg on his petition for reconsideration of sentence in the light of the prevailing circumstances.

These circumstances may be summarized as follows:

Prior to Ginzburg's conviction, the critical question in prosecutions under the federal obscenity statute centered on the published material itself—*was* it obscene *per se?* [3] Manual Enterprise

---

**3.** In Roth v. United States, 354 U.S. 476 (1957) the Court (p. 487, 77 S.Ct. 1304, p. 1310, 1 L.Ed.2d 1498) said: "Obscene material is material which deals with sex in a manner appealing to prurient interest", and (p. 489, 77 S.Ct. p. 1311) stated that the test is "whether to the average person, applying contemporary

Inc. v. Day, 370 U.S. 478, 489, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962); Roth v. United States, 354 U.S. 476, 488–489, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

In its Opinion in the instant case, the Supreme Court added a new ingredient to its previously declared *"obscene per se"* testing formula—an ingredient which, acting as a catalyst, transforms published material which standing alone is not obscene *per se,* into obscene matter. That ingredient is "pandering"—exploiting a publication, via promotional advertising or literature which represents it "as erotically arousing", and places "sole emphasis * * * on the sexually provocative aspects" of the publication.

The Supreme Court epitomized this ingredient in its Opinion as follows (383 U.S. pp. 475–476, 86 S.Ct. p. 950):

> "Where an exploitation of interests in titillation by pornography is shown with respect to material lending itself to such exploitation through pervasive treatment or description of sexual matters, such evidence may support the determination that the material is obscene even though in other contexts the material would escape such condemnation".

It must be noted on the score of the stated obscenity-testing formula that the Supreme Court expressed the view that it was merely an *elaboration* of the prior "obscenity *per se*" test.

It did so in this prefacing statement (p. 475, 86 S.Ct. p. 950):

> "It is important to stress that this analysis simply *elaborates* the test by which the obscenity vel non of the material must be judged". (Emphasis supplied.)

The circumstance that Ginzburg's conviction was affirmed by application of an *elaborated* legal standard or test which had not been announced by the Supreme Court of the United States at the time of his condemned conduct, or trial, is

relevant to the issue of the District Court's denial of his application for a hearing on his petition for reconsideration of sentence in these respects:

Ginzburg did not know, nor could he have known, that at the time he published and exploited Handbook, Eros and Liaison, that the criteria of obscenity included "pandering", and methods of promotional exploitation of a publication proscribed by the *elaborated* obscenity testing formula. Otherwise stated, assuming that Ginzburg personally participated in the condemned activity, he did not know, nor did he have reason to know, that he was violating the obscenity statute. The stated factor merited its presentation to the District Court at a hearing on Ginzburg's petition for reconsideration.

Ginzburg's application to adduce testimony at the sought hearing that he did not take part in the attempts to obtain mailing privileges at Intercourse, Pennsylvania, and Blue Ball, Pennsylvania, or in the obtaining of such privileges at Middlesex, New Jersey, and that he had not adduced such testimony at his trial because his then counsel did not consider the applications to the post offices to be material under the then state of the law, merited hearing and consideration in connection with the sentence reconsideration petition.

Ginzburg's application to present testimony as to his character and prior good conduct record as a law-abiding citizen; the family hardship impacts of his sentence; his commitment to cease the publication of material of the kind which led to his conviction; and his commitment to lead a life free of any criminal conduct, presents considerations significant to the sentencing process, especially when viewed against the background of his 5-year prison sentence. For some inexplicable reason, Ginzburg's trial counsel did not see fit to advise submission of the now proffered testimony prior to the imposition of his sentence, thereby de-

community standards, *the dominant theme of the material taken as a*

*whole appeals to prurient interest".* (Emphasis supplied.)

priving both Ginzburg and the sentencing judge of the consideration of factors which have traditionally been deemed to be critical guide-lines in the sentencing process, and as to which the concept of waiver should not apply. We can come to no other conclusion than that the District Court should have granted Ginzburg's request for a hearing at which he could adduce the aforestated proffered testimony.

For the reasons stated we are of the opinion that the District Court abused its discretion in failing to accord Ginzburg's requested hearing on his petition for reconsideration of sentence in the light of the considerations earlier detailed.

Further, we feel compelled to express our view, that should Ginzburg's testimony at a hearing on his petition establish that he did not participate in the aura producing techniques condemned by the Supreme Court, viz., the mail privilege solicitations at Intercourse, Pennsylvania, Blue Ball, Pennsylvania, and Middlesex, New Jersey, and the good character and hardship aspects of his petition, that it would warrant a significant change by the District Court in the nature and character of its present sentence.

The cause will be remanded to the District Court with directions to grant a hearing on Ginzburg's petition for reconsideration of sentence and to proceed in accordance with this opinion.

Chief Judge HASTIE joins in this opinion and also agrees that the concurring opinions state adequate reasons for vacating the appellant's sentence.

SEITZ, Circuit Judge (concurring).

I concur in the conclusion that this matter should be remanded to the district court. But to avoid any possibility of impinging on the Supreme Court's mandate here, I prefer to ground my vote on reasons that are not dependent upon the soundness of our interpretation of the Supreme Court opinion in this case. However, while not condoning Ginzburg's activities, I think it is appropriate to note how finely the line may be drawn between freedom and imprisonment, even among commercial operators in this field. Compare Redrup v. State of New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).

In his timely petition for reconsideration of sentence under F.R.Cr.P. 35, Ginzburg prayed for an evidentiary hearing. The district judge heard counsel and, without delineating his reasons, entered an order denying the prayers of the petition. This appeal followed.

I believe the refusal to grant Ginzburg an evidentiary hearing on his petition was incompatible with a sound exercise of discretion. I base my conclusion on at least the cumulative effect of the factors of record which I shall discuss.

1. At the time of the original sentencing Ginzburg's counsel made no statement on his behalf and when the court asked the defendant himself if he wished to "address" the court, defendant said that his counsel had "expressed my messages." I need not decide whether Ginzburg was afforded a sufficient opportunity to make a statement and presentation under Rule 32(a) when he was invited to "address" the court. The court did have a presentence report but its contents were not disclosed. The petition for reconsideration recites that Ginzburg did not take advantage of his original opportunity because he was relying on the advice of his counsel, who presumably felt that a reversal of the conviction was a certainty. It was not of decisive importance that Ginzburg did not take advantage of the opportunity to speak, for whatever reason. What was important was that at the reconsideration stage he wanted to do so and was denied that privilege. Had he been permitted to speak he might have supplied the trial judge with material which would have been helpful to the judge in deciding the merits of the petition. It is not a matter of waiver in this context. Rather, it is the desirability of the sentencing judge being as fully informed as

possible before deciding an application for reconsideration.

2. There was a lapse of over two and one-half years between the date of the original sentencing and the proceedings on the present petition. Insofar as the petition showed, the refusal to grant the hearing precluded the development of certain relevant matters which arose after the original sentencing. One of the reasons for Rule 35 would seem to be to permit the updating of a sentenced defendant's personal history in aid of an informed reconsideration.

3. At the argument on this petition the district court, referring to his sentencing notes, stated that Ginzburg had been convicted on 28 counts. It then indicated that it could have sentenced him to 140 years. The court then asked counsel: "Now, then, do you want to compare 5 to 140?" I believe that the district court was not legally warranted in assuming that it could have imposed prison sentences aggregating 140 years. I think the allowable units of prosecution were six at most (one for each of the three publications and one for the advertising in connection with each). See Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958). It is true that this would still have permitted the district court to impose a substantially greater prison sentence than was in fact imposed. But that is not the point. The point is that when it fixed the five year prison sentence the district court believed it was being lenient in relation to 140 years. The district court might well desire now to reconsider entirely the nature of the sentence in the light of a corrected understanding of the permissible maximum sentence.

4. In the Government's response to Ginzburg's petition, it was suggested that a hearing would be appropriate. Indeed, it stated further that the Government did not take a position insofar as the petition sought a reduction in sentence.

I believe the product of a full evidentiary hearing may well cause the district court to find merit in the petition. I am confident that it will evaluate the matter afresh and discharge its duty as the evidence and the law dictate.

In my view, the assignment of error based on the refusal of the sentencing judge to disclose the contents of the presentence investigation need not now be considered. Rather, I believe the ruling thereon should be vacated so that it can be renewed before the district court, if deemed important, after the development of the facts at the evidentiary hearing. The court's exercise of discretion, if invoked, can then be made in the light of the developed facts.

Judge FREEDMAN concurs in this opinion.

GERALD McLAUGHLIN, Circuit Judge (dissenting).

Appellant, with three corporate co-defendants, was convicted of violating the federal obscenity law, 18 U.S.C. § 1461. He was sentenced to five years imprisonment and to pay a fine. On appeal this Court affirmed the conviction, 338 F.2d 12 (1964). Thereafter the United States Supreme Court affirmed, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). Petition for rehearing was denied by the Supreme Court, 384 U.S. 934, 86 S.Ct. 1440, 16 L.Ed.2d 536 (1966). Appellant, then finally confronted with the immediacy of his prison sentence, filed a petition for reconsideration of sentence, etc. in the District Court. After extended oral argument, in which there are no signs of restriction, the petition was denied by the order of the District Court filed July 5, 1966. This appeal is from that order.

While appellant's argument is a desperate shotgun performance, his fundamental thesis is that the United States Supreme Court affirmed his conviction "under a new court test of obscenity * * *" of which he had no notice. Following through on this appellant's argument resolves itself into a more or less artful endeavor to relitigate the merits of his obscenity conviction. In connection with this he now asserts

that he had nothing to do with the attempt to secure mailing privileges from Intercourse and Blue Ball. He also at this juncture says that he published the "three books" because he was "wrongly advised" by counsel. In addition and for the first time he asks for the presentence report, claims the judge erred in sentencing him and states that this Court "must not only vacate but modify the sentence imposed on appellant below."

The "new court test" which appellant would have us believe was never argued in the District Court actually was there presented in detail. After the testimony had been concluded both sides argued orally to the Court. In the course of his elaborate main argument, the District Attorney said as to Ginzburg's actions and conduct, "The real purpose that comes out is the pandering and the commercializing upon man's taste for the sensuous, * * *." Referring to the concurring opinion of Chief Justice Warren in Roth v. United States, 354 U.S. 476, 495, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), the District Attorney commented, " * * * we get into an area that Chief Justice Warren in Roth indicated that he thinks is the most important area when he said: 'A book is not on trial, a person is, and the focus should be on the defendant's conduct and the materials are thus placed in the context from which they draw color and purpose.' " After analyzing the three publications with that element in mind the District Attorney stated "So there appears in all three a consistent pattern of commercial exploitation and [in] purveying matter appealing to the prurient interest * * *."

The defense attorney, making his argument after the District Attorney had spoken as above noted, admitted "There is some question of intent here, * * *" but went on in an endeavor to ridicule the position of the Government saying, " * * * but immorality and heresy equals obscenity to the Government of the United States."

The trial Court both in its opinion and in its findings of fact held that the three publications were designed obviously and solely for the purpose of appealing to the prurient interest of an ordinary person. The Court summed up its factual findings saying:

"In conclusion, after a thorough reading and review of all the indicated materials, this Court finds that said materials are compilations of sordid narrations dealing with sex, in each case in a manner designed to appeal to prurient interests. They are devoid of theme or ideas. Throughout the pages of each can be found constant repetition of patently offensive words used solely to convey debasing portrayals of natural and unnatural sexual experiences. Each in its own way is a blow to sense, not merely sensibility. They are all dirt for dirt's sake and dirt for money's sake."

On appeal from the convictions to this Court appellants in their main brief dealt with that phase of the case under their title "The trial court converted evidence of criminal intent admissible against one defendant into proof of criminal intent on the part of all defendants." They complained in their brief that "The trial court found that all the defendants sought to mail from Blue Ball, Pennsylvania, from Intercourse, Pennsylvania, and finally did mail from Middlesex, New Jersey 'in order that the postmark of [the] mailed material would further defendants' general scheme and purpose' ". Their affirmative argument was that the letters, if admissible, were admissible only as to Eros.

The Government developed the commercial exploitation of morbid sex at length in its answering brief. It cited Kahm v. United States, 300 F.2d 78 (5 Cir. 1962) in support of this and again quoted Chief Justice Warren's language in his concurring opinion in Roth. Appellants' reply brief made a full effort to answer that Government argument.

Our opinion on the appeal, 338 F.2d 12 (1964), covered the point factually and decisionally. Appellants' petition for certiorari sharply brought the specific

problem to the United States Supreme Court in 6(a) and (b) of its "Questions Presented" which read as follows:

"6(a). Where four defendants are jointly indicted and tried for non-related obscenity offenses and evidence of one defendant's alleged intent to appeal to prurient interest is used to support conviction of all defendants on the theory that they engaged in a 'general scheme and purpose' to commercially exploit obscenity, may the appellate court disregard the erroneous transfer of such intent and affirm all four convictions on the theory that each defendant knew the contents of the mailed material?

"(b). Is the fact that a defendant commercially exploits a literary work for a profit a relevant consideration in determining whether that work is 'obscene' under 18 U.S.C. § 1461?"

The Supreme Court in passing upon those questions and holding that appellants' exploitation of the material involved was on the basis of its appeal to prurient interests, said:

"It is important to stress that this analysis simply elaborates the test by which the obscenity vel non of the material must be judged. Where an exploitation of interests in titillation by pornography is shown with respect to material lending itself to such exploitation through pervasive treatment or description of sexual matters, such evidence may support the determination that the material is obscene even though in other contexts the material would escape such condemnation," United States v. Ginzburg et als., 383 U.S. 463, 475–476, 86 S.Ct. 942, 950, 16 L.Ed.2d 31 (1966).

The Court inter alia cited with approval the mentioned concurring opinion of Chief Justice Warren and the very much in point Judge Learned Hand opinion in United States v. Rebhuhn, 109 F.2d 512 (2 Cir. 1940).

It will be noted that the exploitation issue was set out by appellants as a trial fact in their petition for certiorari to the Supreme Court. And it is significant that the trial offers in evidence of the defendants' applications to the Post Offices at Blue Ball and Intercourse were not objected to on behalf of Ginzburg on the ground that he had had nothing to do with them. They were objected to as "in no way relevant to the particular issue or publication upon which the defendant had been indicted." Concerning the application to the Middlesex Post Office, the Postmaster of Middlesex testified that "On the 13th of August, Eros Books, Incorporated, 110 West 40th Street, New York * * * requested through a mail order house, a patron of Middlesex Post Office, an application to mail without affixed postage." There was no objection to that testimony and it was from that Post Office that 6,067,573 pieces of all classes of mail were sent by Eros.

Appellants petitioned the Supreme Court for rehearing. In their petition they asserted at great length that the "sordid business of pandering was not in the case at all." The petition for rehearing was denied.

It is plain from the record that appellant's assertion that the Supreme Court affirmed his conviction on a new court test of obscenity of which he had no notice is entirely ill-founded in law and in fact.

The remaining contentions of appellant need but brief comment.

Ginzburg, the sole appellant in the issue before us, has now made an affidavit that he had no part in the applications to the United States Postmasters at Blue Ball and Intercourse. He does not deny knowledge of the Middlesex application which the Postmaster of that place had testified was made by Eros through a mailing house.

The trial proofs were that the applications to the Blue Ball and Intercourse Post Offices were made by the defendant Eros Corporation. The letters in evidence were signed for Eros by the associate publisher of that corporation. Ginzburg was the admitted publisher.

The whole trial defense objection to the admission of the letters in evidence was on the ground they were irrelevant to the particular issue of the magazine involved. The sole objection to the first two applications on appeal was not that they did not show evidence of criminal intent but that such evidence should be directed only to Eros Corporation. The trial Court found on substantial evidence that all the defendants took part in those applications and in the successful one to Middlesex and that all three places were chosen in furtherance of defendants' general scheme and purpose. The fact that in the circumstances surrounding the current affidavit of appellant, the Government does not challenge it, is of course no bar to the decision of the District Judge in assessing its credibility.[1] Irrespective of appellant in this petition denying participation in the mailings, there was compelling trial evidence of his responsibility for the said applications.

Appellant argues that he was entitled to the disclosure of the presentence report. He never requested that report until this petition on July 1, 1966. The named ground for the request was so that appellant could "offer evidence contrary to statements therein which may be incorrect." Under Fed.R.Crim.P. 32(c) (2) as amended, disclosure of said report is within the discretion of the judge and that discretion was not here abused.

Appellant also claims that the District Court acted upon an erroneous legal assumption when sentencing appellant. The contention is clearly made of whole cloth. There was no error of any substance arising out of the sentencing. The three year prison concurrent sentences were for all of the indictment counts for the mailing of the Housewife's Handbook on Selective Promis-

cuity. The two year concurrent sentences were for all the counts on the mailing of the Eros Magazine. The three year concurrent sentences were to run consecutively with the two year concurrent sentences which made five years as the total prison time to be served by appellant. The sentences were in strict accordance with the statute. They were never so objected to until this motion. The decisions cited for appellant are inapposite. After again reviewing the original trial of this case in depth I see no abuse of discretion by the District Court in the imposition of those sentences, United States v. Frank, 245 F.2d 284, 288 (3 Cir. 1957), cert. den. 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed.2d 35 (1957).

It is asserted on behalf of appellant that he was entitled to a hearing on the petition for reconsideration of his sentence. Prior to the original sentencing the Court asked both of appellant's attorneys if they wished to say anything. They both responded in the negative. The Court then stated, "The defendant may address the Court." The defendant answered "I think my attorney has expressed my messages, thank you." The Court queried him "You have nothing further to add?" The defendant said "No, sir, thank you." Beyond question there was no infringement of appellant's rights; to the contrary there was intentional relinquishing or abandonment of a known right or privilege by appellant and his attorneys.

Appellant relies on Rule 32(a) Fed.R. Crim.P. for a hearing at this time. That rule refers to the original sentencing and not to this motion for reconsideration. Rule 35 Fed.R.Crim.P. grants the Court authority to correct "an illegal sentence at any time * * *." That rule does not provide for a mandatory hearing. A

---

1. There was a query from this Court to counsel for appellant during oral argument regarding purported direct statements by appellant concerning the attempted mailing in a then current publicly circulated book (titled "Freedom On Trial") in defense of appellant with a foreword by the "Chairman, Committee To Protest Absurd Censorship." *Counsel promptly filed affidavits by appellant and the book's author which in effect denied the truth of the book's said statements.*

hearing on the petition before us was within the discretion of the trial Court. Under all the facts it cannot be justly held that in denying such hearing the trial Court abused its discretion. Del Piano v. United States, 362 F.2d 931 (3 Cir. 1966) has no bearing on our situation. In that decision there was a conviction following a plea of guilty. Later, the defendant in a 2255 proceeding swore that the guilty plea had been induced by a promise of a concurrent sentence with the one defendant was serving. On counter affidavits that was denied. We held the defendant should have been given a hearing on his charge. Ginzburg had a full and fair trial. He and his attorneys waived a hearing as to the sentence. Now because he makes the totally unwarranted claim that the United States Supreme Court erroneously affirmed his conviction, he asks for another hearing under the guise of reconsideration of the sentence. The Court in its discretion refused that request. The refusal was reasonable, within the sound discretion of the trial Judge.

Turning to specific consideration of the majority opinion I note that it starts out by firmly holding that "Ginzburg did not know, nor could he have known, that at the time he published and exploited Handbook, Eros and Liaison, that the criteria of obscenity included 'pandering', and methods of promotional exploitation of a publication proscribed by the elaborated obscenity testing formula. Otherwise stated, assuming that Ginzburg personally participated in the condemned activity, he did not know, nor did he have reason to know, that he was violating the obscenity statute." Therefore, concludes the Court "The stated factor merited its presentation to the District Court at a hearing on Ginzburg's petition for reconsideration." The majority thus offhandedly accepted in its stride, the admitted truth that Ginzburg was a panderer and occupied in his profession in this instance. The Supreme Court in its decision here, quoting from the concurring opinion of the Chief Justice in Roth, describes pandering as "the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of their customers." 383 U.S. at 467, 86 S.Ct. at 945. Apparently it will be startling news that the defendants in Roth (1957), just as was this appellant, " * * * were plainly engaged in the commercial exploitation of the morbid and shameful craving for materials with prurient effect." Chief Justice Warren went on to state "I believe that the State and Federal Governments can constitutionally punish such conduct. That is all that these cases present to us and that is all we need to decide." Roth v. United States, 354 U.S. at 496, 77 S.Ct. at 1315 (1957). Roth in its four opinions was certainly well known to Ginzburg and to all his attorneys. Even the Roth dissent in trying to denigrate the majority view stressed the "pandering" element saying p. 500, 77 S.Ct. 1304, "The tests by which these convictions were obtained require only the arousing of sexual thoughts." 354 U.S. 509, 77 S.Ct. 1322. It is beyond belief that this professional panderer through the device of protesting under oath at this time that he did not know or have reason to know that his operation was other than in the clear by reason of the governing Roth decision, is entitled to the rehearing called for by the majority. The Supreme Court in this appeal said, 383 U.S. at 466, 86 S.Ct. at 945: " * * * as did the courts below, 224 F.Supp. at 134, 338 F.2d at 14–15, we view the publications against a background of commercial exploitation of erotica solely for the sake of their prurient appeal." That is the way appellant planned and executed his evil scheme. In that posture the offense was and is a Roth offense. The trial judge was thoroughly conversant with this, so much so that the Supreme Court in its Ginzburg opinion p. 465, 86 S.Ct. p. 944 held that *"Since petitioners do not argue that the trial judge misconceived or failed to apply the standards we first enunciated in* Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498,[3] *the only serious question is whether those standards*

*were correctly applied."* (Footnote omitted.) (Emphasis supplied.)

Appellant in the Supreme Court had a go at bolstering his contention of unawareness of what he characterized as the Government's alleged trial position, i. e., that his methods of presentation and distribution were prime elements of his offenses. The Supreme Court in its opinion at p. 466, n. 6, 86 S.Ct. at p. 942 comments regarding this:

"6. It is suggested in dissent that petitioners were unaware that the record being established could be used in support of such an approach, and that petitioners should be afforded the opportunity of a new trial. However, the trial transcript clearly reveals that at several points the Government announced its theory that made the mode of distribution relevant to the determination of obscenity, and the trial court admitted evidence, otherwise irrelevant, toward that end."

Obviously the statement that Ginzburg did not know and had no reason to know that his pandering use of his materials was not within the obscenity statute, viz., the controlling Roth law, is ill advised. The statement has no justification; it is a sorry ground on which to grant a rehearing in this appeal.

The second reason offered by the majority in advocating a rehearing is that Ginzburg's current statement that he had no part of the mailing attempts and that the only reason he did not so testify was that his attorney "did not consider the applications to the post offices to be material under the then state of the law, merited hearing and consideration in connection with the sentence reconsideration petition." This would seem to be an unsuspecting endeavor to allow Ginzburg to testify falsely, contrary to the unimpeachable record. I have earlier outlined the facts of this phase of the trial in disposing of appellant's argument thereon. Those facts could not be distorted by any glib, disingenuous story to the contrary; particularly by appellant on this issue as he does with others, trying

to foist the responsibility for his trial maneuvers onto his attorneys who, as appears, were specially recommended to him by the American Civil Liberties Union which organization has filed a brief with this Court on behalf of appellant. What appellant hopes will be in some fashion overlooked and which is not even mentioned by the majority or concurring opinions is that appellant for himself and his co-defendants entered into an elaborate formal stipulation prior to trial wherein he, over his signature, for himself and his co-defendants stated that in all counts of the bill of indictment involving the three publications " * * * *the defendants did knowingly mail or cause to be mailed the materials set forth in those counts on the dates set forth, fully knowing the contents of said materials."* (Emphasis supplied.)

In the light of all of the above there is no validity to this point. To say the least it is legally frivolous.

The remaining reasons for allowing a rehearing regarding the sentence in this matter are said by the majority to be that Ginzburg should be given an opportunity to tell about his character, his good conduct record as a law abiding citizen, and family matters. Both he and his lawyers directly refused that opportunity, fairly and unmistakenly offered by the trial Judge. His actions and conduct since can be seen crystal clear if one will look. The family conditions, whatever they may have been, were in existence both while Ginzburg was pursuing his carefully plotted course with his pandering project and during his trial. Despite that he and his attorneys affirmatively refused to tell the Court anything about them. The majority concludes that if it is established that Ginzburg did not participate in the mail privilege episodes, that his character was and is good and that he has family problems, there should be a significant change in the sentence. If the record is conscientiously examined it will reveal what is above shown, that Ginzburg beyond all doubt participated in the mailing endeavors, that the evil business he chose and followed, thorough-

ly establishes his character. His family has lived with the public knowledge of appellant's occupation for some years now. A flagrant exhibition in the District Court as contemplated, contrary to the established truth of the basic elements of appellant's conviction and sentence, is not indicated in this case.

The concurring opinion is also in favor of Ginzburg speaking at this time, on the named theory that he might supply the judge with *material helpful* in deciding the merits of the motion. All this has been gone into above and needs no repitition. The other suggestion is that trial judge was confused regarding the sentence he imposed. That also has been fully dealt with earlier in this opinion. This Court in its unanimous opinion on the merits of the cause, passing upon the action of the trial judge re the mailing issue held "We do not find the slightest evidence of any substantial confusion on the part of the trial judge * * *." That holding is just as applicable to the inconsequential and baseless charge regarding the sentence imposed.

There is a vital point carefully avoided in the majority and concurring opinions with their assertions of abuse of discretion by the trial judge. Actually, to those with a real knowledge of the record in this appeal, the bright, shining light in all this dreary litigation through its Circuit Court stages has been the patient, wise, courageous functioning of Judge Body in the trial court.

From the unavoidable facts and despite such protective gloss as they have the majority and concurring opinions must be held to follow the current hard obscenity line which has this nation so saturated with obscenity and its collaterals that the resultant conditions make Sodom and Gomorrah seem to have been somewhat old fashioned, perhaps prudish communities. The continuing all out effort to salvage appellant from the proper punishment for his shameless crime fits perfectly into the moral breakdown with which the United States of America is faced. Earlier this month among the strong sane voices refusing to bow to such destructive effort was that of Dr. Milton S. Eisenhower who warned that "licentiousness and persistent violence" could result in anarchy and, ultimately, dictatorship.

To remand this appeal with respect to the sentence, for the reasons advanced is grossly unwarranted.

Judge STALEY concurs in this dissent.

VAN DUSEN, Circuit Judge (dissenting).

I dissent for the reasons stated in Judge McLAUGHLIN's thorough and accurate examination of the prior decisions in this litigation and of the extensive record, and particularly in his legal analysis and discussion which also appeared in his opinion filed March 13, 1967, prior to this court's granting rehearing. Also, I agree that Judge Body has acted carefully and properly in his handling of this protracted criminal proceeding. The fact that the sentencing judge mentioned in an "offhand remark" a possibly excessive sentence does not justify review of a sentence concededly well within the limits of the applicable statutes. Cf. United States v. DeAngelis, 361 F.2d 788, 790 (3rd Cir.), cert. den. 385 U.S. 834, 87 S. Ct. 77, 17 L.Ed.2d 69 (1966). Congress and this court have repeatedly recognized that review of sentences by the Federal appellate courts is not permitted under these circumstances. See e. g., S. 2722, 89th Cong., S. 823, 88th Cong., S. 1692, 87th Cong., and S. 3914, 86th Cong., H.R. 270, 85th Cong.; [1] Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed. 2d 1405 (1958); United States v. Frank, 245 F.2d 284, 288 (3rd Cir.), cert. den. 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed.2d 35 (1957). Appellant was not precluded from including any relevant matters in his Petition for Reconsideration and,

---

1. None of the above Bills providing for appellate review of federal sentences was enacted by Congress; see, also, "Appellate Review of Sentences," 32 F.R.D. 249 (1962).

since the factual contents of that Petition were treated as true at the 1966 argument, no need existed for a hearing.

I believe the order of the District Court should be affirmed.

Judge STALEY concurs in this dissenting opinion.