NORTHEAST THEATRE CORPORATION, Parkway Drive-In Theatre, Inc., Hub Theatres, Inc. and Neponset Drive-In Theatre, Inc.

v.

Joseph M. JORDAN, as Police Commissioner of the City of Boston, and City of Boston.

Civ. A. No. 72–1558–F.

United States District Court, D. Massachusetts.

Jan. 23, 1978.

Evan Y. Semerjian, Jerome P. Facher, Hale & Dorr, Boston, Mass., for plaintiffs.

Mary Costello, West Roxbury, Mass., Harold J. Carroll, Asst. Corp. Counsel, Boston, Mass., for defendants.

## OPINION

FREEDMAN, District Judge.

This is an action for declaratory judgment challenging the constitutionality of an ordinance of the City of Boston which prohibits the showing of motion pictures on open air screens visible from a public or private way, an adjacent parcel of real estate, or any building or structure in the vicinity.[1] By its terms, the ordinance applies only to showings for which admission is charged. Plaintiffs are the owners and operators of three drive-in motion picture theatres in the City of Boston. Plaintiffs attack the ordinance on its face under both the First and Fourteenth Amendments to the Constitution. The matter is before the Court on plaintiffs' motion for summary judgment which the Court now grants.

Plaintiffs' theatres were all constructed prior to 1957, pursuant to building permits issued by the defendant City of Boston. Since then they have been annually licensed to show motion pictures and have been granted a variety of licenses and permits by the City of Boston and the Commonwealth of Massachusetts. The screens of the drive-ins are in the same locations as at the time of their construction.

Sometime in 1971, the plaintiffs agreed with the City not to show so-called "X-rated" movies at these drive-ins.[2] On April 5, 1971, the Boston City Council passed the following order:

ORDERED: That Corporation Counsel be requested to prepare a draft of an ordinance for consideration by the City Council which would require open air theatres which show X-rated films to properly shield such outdoor screens from the surrounding neighborhoods so that children in these areas are not exposed to such viewing.

On May 21, 1971, the Corporation Counsel advised the City Council that the "X-rating" could not constitutionally be the basis for an ordinance and submitted a draft ordinance based on a "somewhat different approach." On December 13, 1971, the City Council passed the following ordinance:

## AN ORDINANCE REQUIRING THE SHIELDING OF SCREENS IN OPEN AIR THEATRES

Be it ordained by the City Council of Boston, as follows:

SECTION 1. Chapter 29 of the Revised Ordinances of 1961 is hereby amended by inserting after section 108 the following caption and section:

*Open-Air Theatres.*

Section 108A. No person shall project a motion picture upon any screen in the open air on any estate in the city to which admission is obtained upon the payment of money or the delivery of any valuable thing or by a ticket or voucher obtained for money or any valuable thing if such screen is open to view from a public or private way or an adjacent estate or from any part of a building or other structure in the vicinity.

SECTION 2. Section 110 of said chapter 29 is hereby amended by striking out the first sentence, as appearing in section 2 of chapter 9 of the Ordinances of 1969, and inserting in place thereof the following sentence:—Any person violating any provision of section 28, 41, 42, 43, 44, 45, 46, 49, 49A, 49B, 49C, 57, 57A or 108A shall be punished by a fine not exceeding fifty dollars for each offense.

This is the ordinance challenged in this action.

After the ordinance was passed, the plaintiffs, who claim that they received no

---

1. Section 108A, Chapter 29, Boston Revised Ordinances of 1961, as amended January 24, 1972.

2. The "X-rating" is assigned by the Motion Picture Association to films deemed not suitable for children under 17.

notice of its proposed adoption, reiterated in writing their previous promise not to show "X-rated" movies. On January 4, 1972, the Mayor of the City of Boston vetoed the ordinance. On January 24, 1972, the City Council overrode the Mayor's veto, and the ordinance went into effect immediately.

The plaintiffs' drive-ins are the only drive-ins in Boston and are the only drive-ins affected by the ordinance. This fact was known to the City Council when the ordinance was adopted. Compliance with the ordinance for the two drive-ins presently operating would cost more than three million dollars.

The plaintiffs filed their complaint on May 11, 1972. On May 22, 1972, plaintiffs applied for a preliminary injunction. Finding a threat of multiple and continuing prosecutions with resulting irreparable injury to plaintiffs, as well as a likelihood of plaintiffs' success on the merits, the Honorable Francis J. W. Ford issued a temporary restraining order and a preliminary injunction enjoining enforcement of the ordinance. The temporary restraining order and the preliminary injunction were issued on June 22, 1972.

■ The plaintiffs contend that the object of the ordinance, as evidenced by its history in the City Council, is to prevent the showing of "X-rated" films at open air drive-in theatres. The undisputed facts support this conclusion. The ordinance has its roots in the April 5, 1971 order of the City Council directing the Corporation Counsel to prepare a draft ordinance aimed at "X-rated" movies. On his recommendation, the City Council passed the ordinance at bar. The plaintiffs argue that in light of this purpose, the ordinance is overbroad in that it restricts the showing of any film at an unshielded open air theatre.

■ The Court is compelled to agree with the plaintiffs that if the purpose of the ordinance was to prohibit "X-rated" movies, the ordinance is overbroad. The showing of motion pictures is a form of expression protected by the First Amendment, *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502,

72 S.Ct. 777, 96 L.Ed. 1098 (1952), and the Supreme Court has long recognized that:

. . . the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society.

*Broadrick v. Oklahoma*, 413 U.S. 601, 611–612, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). Although a city may have a legitimate interest in prohibiting public expression of unprotected material such as obscenity, *e. g., Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, *reh. denied*, 355 U.S. 852, 78 S.Ct. 8, 2 L.Ed.2d 60 (1957), the ordinance in this case sweeps into its prohibitions all unshielded open air motion picture showings regardless of the content of the material shown. A substantial amount of protected material is thus prohibited by the ordinance.

The Supreme Court in *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), applied similar overbreadth analysis to strike down an ordinance which prohibited unshielded drive-in showings of motion pictures in which "the human male or female bare buttocks, human female bare breasts, or human bare pubic areas are shown . . . ." The Court noted that the ordinance swept beyond permissible restraints on obscenity and thus affected expression protected by the First Amendment. *Id.* at 208, 95 S.Ct. 2268. The ordinance at bar is even broader than the one in *Erznoznik*.

■ The City contends that protection against the slower flow of traffic and the increased likelihood of accidents caused by the proximity of an unshielded screen to the highway, coupled with the right of neighboring residents to freedom from the intrusions of images on the screen are sufficient interests to support the constitutionality of the ordinance as a reasonable restriction on the time, manner and place of motion picture exhibition. While it may be ". . . that a narrowly drawn nondiscriminatory

traffic regulation requiring screening of drive-in . . ." motion picture screens from the view of motorists would be constitutionally permissible, *Erznoznik v. City of Jacksonville, supra* at 215, n. 13, 95 S.Ct. 2268, the ordinance in this case cannot be sustained.

■ To begin with, the ordinance goes far beyond restricting the showing of motion pictures on screens visible from the roads and includes within its prohibitions those screens visible from a ". . . public or private way or an adjacent estate or from any part of a building or other structure in the vicinity." The City's contention that this broad language is justified by its interest in protecting the rights of neighboring citizens from the intrusions of images on the screens is without merit. "[T]he screen of a drive-in theater is not 'so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it.'" *Erznoznik v. City of Jacksonville, supra* at 212, 95 S.Ct. at 2274, citing *Redrup v. New York*, 386 U.S. 767, 769, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). The ordinance therefore includes within its grasp protected expression whose regulation the City cannot justify.

■ Even if the ordinance had been limited to prohibiting the showing of motion pictures visible from the streets and highways, or if the City's claim of right to protect its citizens from the intrusions of images on the screen were valid, the ordinance could not be sustained. The ordinance prohibits showings on unshielded open air screens of motion pictures only on those premises to which admission is charged. This is a clearly underinclusive classification since there is no conceivable reason that motion picture images shown without charge would be any less harmful to the interests which the City asserts it seeks to protect. *Cf. Erznoznik v. City of Jacksonville, supra*, 422 U.S. at 214–215, 95 S.Ct. 2268. While underinclusion is often sustainable where it appears in the context of economic regulation, e. g., *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), it must be supported by a more substantial governmental interest where First Amendment freedoms are involved. *E. g., Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *cf. Mancuso v. Taft*, 476 F.2d 187 (1st Cir. 1973). In this case the City has not even alleged any such substantial governmental interest to justify the classification. It makes no difference that the protected expression sought to be regulated is carried on for profit. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) and cases cited.

■ The test to which a summary judgment motion must be put is a stringent one. *E. g., Peckham v. Ronrico Corp.*, 171 F.2d 653 (1st Cir. 1948). Where, however, no genuine issue of material fact remains for determination, summary judgment is appropriate. This is true even though a case may involve constitutional questions. *E. g., Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), or that the action is one seeking declaratory relief. 6 J. Moore, Federal Practice ¶ 56.-17[19] at 56–841. In this case, the Court has determined that there is no genuine issue of material fact. Defendant's blanket assertion that a factual question remains for determination is of little weight. Not only does defendant fail to inform the Court what that remaining issue is, but defendant has filed no affidavits and has relied on the pleadings alone.

■ For the foregoing reasons the Court finds the challenged ordinance to be an unwarranted restriction on the exercise of rights protected by the First Amendment.[3] Section 108A of Chapter 29 of the Boston Revised Ordinances of 1961, as amended January 24, 1972, is therefore declared to be unconstitutional and the preliminary in-

---

3. In light of this holding, the Court finds it unnecessary to consider plaintiffs' vagueness or due process attacks on the ordinance.

junction issued on June 22, 1972, restraining enforcement of the ordinance shall be made permanent.

Judgment for the plaintiffs and an appropriate order shall issue.

## FINAL JUDGMENT and PERMANENT INJUNCTION

This matter came before the Court on plaintiffs' motion for summary judgment. The Court, having heard oral arguments and having considered the record and the relevant authorities, and it appearing that § 108A of Chapter 29 of the Boston Revised Ordinances of 1961, as amended January 24, 1972, is unconstitutional, in accordance with this Court's Opinion of January 23, 1978, it is hereby ORDERED, ADJUDGED and DECREED that:

1. Section 108A of Chapter 29 of the Boston Revised Ordinances of 1961, as amended January 24, 1972, is declared to be unconstitutional and invalid as an unwarranted restriction on the exercise of rights protected by the First Amendment.

2. Since § 108A of Chapter 29 of the Boston Revised Ordinances of 1961, as amended January 24, 1972, restricts the expression of material protected by the First Amendment, it is overbroad, and since the ordinance is also unsustainable as a reasonable restriction on the time, manner and place of the expression it restricts, it is declared to be unconstitutional and invalid. Defendants, Joseph M. Jordan, as he is Police Commissioner of the City of Boston (and any successor or acting Police Commissioner), and the City of Boston, their agents, servants, employees and attorneys, and those persons in active concert or participation with them, are therefore permanently enjoined from prosecuting, continuing to prosecute, issuing or causing to be issued, any criminal complaints based on any alleged violation of § 108A of Chapter 29 of the Boston Revised Ordinances of 1961, as amended January 24, 1972. This order shall have the effect of making permanent the preliminary injunction issued by the Honorable Francis J. W. Ford on June 22, 1972.