## REDRUP v. NEW YORK.

No. 3. Argued October 10, 1966.—Decided May 8, 1967.*

*Sam Rosenwein* argued the cause for petitioner in No. 3. With him on the briefs were *Stanley Fleishman* and *Osmond K. Fraenkel*. *Mr. Fleishman* argued the cause and filed briefs for petitioner in No. 16. *Emanuel Redfield* argued the cause and filed briefs for appellants in No. 50.

*H. Richard Uviller* argued the cause for respondent in No. 3. With him on the brief were *Frank S. Hogan* and *Alan F. Scribner*. *John B. Browning*, Assistant Attorney General of Kentucky, argued the cause for respondent in No. 16. With him on the brief was *Robert Matthews*, Attorney General. *Fletcher Jackson*, Assistant Attorney General of Arkansas, argued the cause for appellee in No. 50. With him on the brief were *Bruce Bennett*, Attorney General, *H. Clay Robinson*, Assistant Attorney General, and *Jack L. Lessenberry*.

---

*Together with No. 16, *Austin* v. *Kentucky*, on certiorari to the Circuit Court of McCracken County, Kentucky, argued on October 10–11, 1966, and No. 50, *Gent et al.* v. *Arkansas*, on appeal from the Supreme Court of Arkansas, argued October 11, 1966.

*Morris B. Abram* and *Jay Greenfield* filed briefs for the Council for Periodical Distributors Associations, Inc., as *amicus curiae,* urging reversal in all three cases. *Horace S. Manges* filed a brief for American Book Publishers Council, Inc., as *amicus curiae,* urging reversal in No. 50.

*Charles H. Keating, Jr.,* and *James J. Clancy* filed briefs for Citizens for Decent Literature, Inc., as *amicus curiae,* urging affirmance in Nos. 3 and 16.

PER CURIAM.

These three cases arise from a recurring conflict—the conflict between asserted state power to suppress the distribution of books and magazines through criminal or civil proceedings, and the guarantees of the First and Fourteenth Amendments of the United States Constitution.

## I.

In No. 3, *Redrup* v. *New York,* the petitioner was a clerk at a New York City newsstand. A plainclothes patrolman approached the newsstand, saw two paperback books on a rack—Lust Pool, and Shame Agent—and asked for them by name. The petitioner handed him the books and collected the price of $1.65. As a result of this transaction, the petitioner was charged in the New York City Criminal Court with violating a state criminal law.[1] He was convicted, and the conviction was affirmed on appeal.

In No. 16, *Austin* v. *Kentucky,* the petitioner owned and operated a retail bookstore and newsstand in Paducah, Kentucky. A woman resident of Paducah purchased two magazines from a salesgirl in the petitioner's store, after asking for them by name—High Heels, and Spree. As a result of this transaction the petitioner stands convicted

[1] N. Y. Pen. Law § 1141 (1).

in the Kentucky courts for violating a criminal law of that State.[2]

In No. 50, *Gent* v. *Arkansas,* the prosecuting attorney of the Eleventh Judicial District of Arkansas brought a civil proceeding under a state statute,[3] to have certain issues of various magazines declared obscene, to enjoin their distribution and to obtain a judgment ordering their surrender and destruction. The magazines proceeded against were: Gent, Swank, Bachelor, Modern Man, Cavalcade, Gentleman, Ace, and Sir. The County Chancery Court entered the requested judgment after a trial with an advisory jury, and the Supreme Court of Arkansas affirmed, with minor modifications.[4]

In none of the cases was there a claim that the statute in question reflected a specific and limited state concern for juveniles. See *Prince* v. *Massachusetts,* 321 U. S. 158; cf. *Butler* v. *Michigan,* 352 U. S. 380. In none was there any suggestion of an assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it. Cf. *Breard.* v. *Alexandria,* 341 U. S. 622; *Public Utilities Comm'n* v. *Pollak,* 343 U. S. 451. And in none was there evidence of the sort of "pandering" which the Court found significant in *Ginzburg* v. *United States,* 383 U. S. 463.

## II.

The Court originally limited review in these cases to certain particularized questions, upon the hypothesis that the material involved in each case was of a character described as "obscene in the constitutional sense" in

---

[2] Ky. Rev. Stat. § 436.100. The Kentucky Court of Appeals denied plenary review of the petitioner's conviction, the Chief Justice dissenting. 386 S. W. 2d 270.

[3] Ark. Stat. Ann. §§ 41–2713 to 41–2728.

[4] 239 Ark. 474, 393 S. W. 2d 219.

*Memoirs* v. *Massachusetts,* 383 U. S. 413, 418.[5] But we have concluded that the hypothesis upon which the Court originally proceeded was invalid, and accordingly that the cases can and should be decided upon a common and controlling fundamental constitutional basis, without prejudice to the questions upon which review was originally granted. We have concluded, in short, that the distribution of the publications in each of these cases is protected by the First and Fourteenth Amendments from governmental suppression, whether criminal or civil, *in personam* or *in rem.*[6]

Two members of the Court have consistently adhered to the view that a State is utterly without power to suppress, control, or punish the distribution of any writings or pictures upon the ground of their "obscenity." [7] A third has held to the opinion that a State's power in this area is narrowly limited to a distinct and clearly identifiable class of material.[8] Others have subscribed to a not dissimilar standard, holding that a State may not constitutionally inhibit the distribution of literary material as obscene unless "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it

[5] *Redrup* v. *New York,* 384 U. S. 916; *Austin* v. *Kentucky,* 384 U. S. 916; *Gent* v. *Arkansas,* 384 U. S. 937.

[6] In each of the cases before us, the contention that the publications involved were basically protected by the First and Fourteenth Amendments was timely but unsuccessfully asserted in the state proceedings. In each of these cases, this contention was properly and explicitly presented for review here.

[7] See *Ginzburg* v. *United States,* 383 U. S. 463, 476, 482 (dissenting opinions); *Jacobellis* v. *Ohio,* 378 U. S. 184, 196 (concurring opinion); *Roth* v. *United States,* 354 U. S. 476, 508 (dissenting opinion).

[8] See *Ginzburg* v. *United States,* 383 U. S. 463, 499, and n. 3 (dissenting opinion). See also Magrath, The Obscenity Cases: Grapes of Roth, 1966 Supreme Court Review 7, 69–77.

affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value," emphasizing that the "three elements must coalesce," and that no such material can "be proscribed unless it is found to be *utterly* without redeeming social value." *Memoirs* v. *Massachusetts,* 383 U. S. 413, 418–419. Another Justice has not viewed the "social value" element as an independent factor in the judgment of obscenity. *Id.,* at 460–462 (dissenting opinion).

Whichever of these constitutional views is brought to bear upon the cases before us, it is clear that the judgments cannot stand. Accordingly, the judgment in each case is reversed.

*It is so ordered.*

Mr. Justice Harlan, whom Mr. Justice Clark joins, dissenting.

Two of these cases, *Redrup* v. *New York* and *Austin* v. *Kentucky,* were taken to consider the standards governing the application of the *scienter* requirement announced in *Smith* v. *California,* 361 U. S. 147, for obscenity prosecutions. There it was held that a defendant criminally charged with purveying obscene material must be shown to have had some kind of knowledge of the character of such material; the quality of that knowledge, however, was not defined. The third case, *Gent* v. *Arkansas,* was taken to consider the validity of a comprehensive Arkansas anti-obscenity statute, in light of the doctrines of "vagueness" and "prior restraint." The writs of certiorari in *Redrup* and *Austin,* and the notation of probable jurisdiction in *Gent,* were respectively limited to these issues, thus laying aside, for the purposes of these cases, the permissibility of the state determinations as to the obscenity of the challenged publications. Accordingly, the obscenity *vel non* of these publications was not dis-

cussed in the briefs or oral arguments of any of the parties.

The three cases were argued together at the beginning of this Term. Today, the Court rules that the materials could not constitutionally be adjudged obscene by the States, thus rendering adjudication of the other issues unnecessary. In short, the Court disposes of the cases on the issue that was deliberately excluded from review, and refuses to pass on the questions that brought the cases here.

In my opinion these dispositions do not reflect well on the processes of the Court, and I think the issues for which the cases were taken should be decided. Failing that, I prefer to cast my vote to dismiss the writs in *Redrup* and *Austin* as improvidently granted and, in the circumstances, to dismiss the appeal in *Gent* for lack of a substantial federal question. I deem it more appropriate to defer an expression of my own views on the questions brought here until an occasion when the Court is prepared to come to grips with such issues.