PEOPLE *v.* BLOSS

Opinion of the Court

1. Constitutional Law—Free Speech—Obscenity.
    Obscenity is not within the area of protected speech or press under the first amendment to the United States Constitution.

2. Constitutional Law—Due Process—Statute—Vagueness—Obscenity.
    Statute making it unlawful to knowingly sell, lend, give away, or distribute in any manner obscene, lewd, lascivious, filthy, or indecent material is not unconstitutionally vague (CL 1948, § 750.343a as amended by PA 1964, No 143).

3. Constitutional Law—Free Speech—Motion Pictures.
    Motion pictures are protected by the constitutional guarantees of freedom of speech and press unless they are obscene.

4. Criminal Law—Due Process—Arrest Without Warrant.
    It is not required that a police officer have a court determination as to the legality of an act before he makes an arrest.

5. Obscenity — Constitutional Law — Due Process — Arrest — Search and Seizure — Motion Picture.
    Arrest of motion picture theater projectionist and seizure of an allegedly obscene motion picture without a warrant was proper because the arresting officers had reason to believe a misdemeanor was being committed in their presence where the officers made the arrest and seized the motion picture in question only after viewing the picture in its entirety, and where the record reveals that the arresting officers had sufficient information as to the proper tests to be applied to determine obscenity.

---

References for Points in Headnotes

[1–3, 5–7, 9] 33 Am Jur, Indecency, Lewdness and Obscenity §§ 4, 5, 14.
  16 Am Jur 2d, Constitutional Law §§ 342, 348 *et seq.*
  Modern Concept of Obscenity. 5 ALR3d 1158.
[2] 16 Am Jur 2d, Constitutional Law § 552.
[4, 5] 5 Am Jur 2d, Arrest § 22 *et seq.*
[8] 5 Am Jur 2d, Appeal and Error § 894.

6. OBSCENITY—MOTION PICTURE.

A motion picture must have a dominant theme which taken as a whole appeals to prurient interest in sex, must be patently offensive in going beyond contemporary community standards relating to the description or representation of sexual matters, and must be utterly without redeeming social value before it can be declared obscene.

7. OBSCENITY—MOTION PICTURE—NATURE OF MEDIUM.

Description or depiction of acts and occurrences which would not be obscene if described in written words may be obscene when depicted in a motion picture since the conditions under which this content is conveyed to the viewer might result in an entirely different impact.

8. TRIAL—JURY INSTRUCTIONS—APPEAL AND ERROR.

Trial court's instructions to the jury are to be considered as a whole in making a determination on appeal whether error was present.

DISSENTING OPINION

QUINN, P. J.

9. OBSCENITY—MOTION PICTURE.

The motion picture "A Woman's Urge" is not constitutionally obscene within the meaning of tests of obscenity announced by the United States Supreme Court.

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 March 7, 1969, at Grand Rapids. (Docket No. 4,587.) Decided July 29, 1969. Rehearing denied September 5, 1969. Application for leave to appeal filed September 26, 1969.

Floyd G. Bloss was convicted of unlawfully exhibiting an obscene motion picture. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *S. J. Venema,* Chief Appellate Attorney, for the people.

*John W. Piggott,* for defendant.

Before: Quinn, P. J., and Holbrook and T. M. Burns, JJ.

T. M. Burns, J.  The defendant appeals his conviction and sentence under CL 1948, § 750.343a as amended by PA 1964, No 143 (Stat Ann 1969 Cum Supp § 28.575[1]) for showing an obscene movie entitled "A Woman's Urge" at the Capri Theatre which he operated in the city of Grand Rapids.

The pertinent facts are set forth in the trial judge's decision on the motion for new trial:

"The testimony at the trial indicated that 'A Woman's Urge' was shown at the Capri Theatre from February 2 to February 8, 1966.  On the evening of February 3, 1966, certain police officers and officials of the city of Grand Rapids, together with professors from Calvin and Aquinas Colleges, attended the showing of 'A Woman's Urge'.  Thereafter a meeting was held at the prosecuting attorney's office and on the evening of February 8, 1966, members of the vice squad purchased tickets for the showing of 'A Woman's Urge' and saw the entire film.  Immediately thereafter, two members of the vice squad, who had seen the movie, went to the projection booth, there found Billy C. Sturgess in the projection booth, rewinding the film to 'A Woman's Urge'.  The officers identified themselves and arrested Mr. Sturgess and seized the film incidentally to the arrest.  Thereafter they permitted Mr. Sturgess to continue showing the motion picture which was then being shown and subsequently brought him to the police department where he was served with a complaint and warrant.  Likewise a complaint and warrant were served upon Mr. Bloss, who came to the police department at the request of the police officers.  At the trial several police officers testified in detail as to the movie and applied the 'Roth test' to the movie.  In addition an expert witness from Aquinas College was called who testi-

fied relative to the movie and applied the Roth test. The jury, after extensive deliberation, convicted Mr. Bloss."

The defendant objected at trial to the admission in evidence of the film which he alleges was seized in violation of the Fourth and Fourteenth Amendments of the United States Constitution. The film was admitted over his objection and the jury found him guilty. The judge acquitted the projectionist.

Defendant asserts that the applicable statute (PA 1964, No 143 [CL 1948, § 750.343a (Stat Ann 1969 Cum Supp § 28.575[1])])* is unconstitutional because it is vague and indefinite. Clearly it is within the power of the legislature to enact such a statute, as obscenity is not within the area of protected speech or press under the First Amendment. *Roth* v. *United States* (1957), 354 US 476, 485 (77 S Ct 1304, 1 L Ed 2d 1498); *Ginsberg* v. *New York* (1968), 390 US 629, 635 (88 S Ct 1274, 20 L Ed 2d 195.) *People* v. *Villano* (1963), 369 Mich 428, which concerned the prior statute to which only the element of knowledge was added, indicates that the statute is not unconstitutionally vague in the eyes of the Supreme Court of Michigan. After a careful analysis of the statute we find that it is not vague in the constitutional sense.

---

* "Any person knowingly either who sells, lends, gives away, distributes, shows or transmutes or offers either to sell, lend, give away, distribute, show or transmute, or has in his possession with intent either to sell, lend, give away, distribute, show or transmute, or advertise in any manner, or who otherwise knowingly offers for either loan, gift, sale or distribution, any obscene, lewd, lascivious, filthy or indecent sadistic or masochistic book, magazine, pamphlet, newspaper, story paper, writing, paper, phonograph record, picture, drawing, photograph, motion picture film, figure, image, wire or tape recording or any written, printed or recorded matter of an indecent character which may or may not require mechanical or other means to be transmuted into auditory, visual or sensory representations of such character, shall be guilty of a misdemeanor, and upon conviction shall be punished by imprisonment in the county jail for not more than 1 year or by a fine of not more than $1,000 or by both such fine and imprisonment."

Certainly, however, it has been established that motion pictures are protected by the constitutional guarantees of freedom of speech and press unless they are obscene. *Joseph Burstyn, Inc.* v. *Wilson* (1952), 343 US 495 (72 S Ct 777, 96 L Ed 1098); *Kingsley International Pictures Corp.* v. *Regents* (1959), 360 US 684 (79 S Ct 1362, 3 L Ed 2d 1512); *Jacobellis* v. *Ohio* (1964), 378 US 184 (84 S Ct 1676, 12 L Ed 2d 793). Therefore, only if a motion picture is obscene can it be seized.

The people assert that this determination of obscenity can be initially made by the police. The people further assert that when an officer believes a film to be obscene a misdemeanor is being committed in his presence and that, consequently, he has a right to seize the film as evidence without first getting a warrant.

The defendant asserts that under the circumstances in this case it was not lawful for the officers to make an arrest for a claimed misdemeanor committed in their presence. Defendant also advances the theory that inasmuch as the officers had to make a determination as to whether or not a misdemeanor was being committed in their presence that it was necessary to show that they were thoroughly acquainted with the test set down in the case of *Roth* v. *United States, supra.* The people assert that the officers were adequately informed as to the tests to be applied and knew what had to be considered in order to determine that the film was obscene. In the criminal jurisprudence of our State it is not required that a police officer have a court determination as to the legality of an act before he makes an arrest. We do not think the case of *Lee Art Theatre, Inc.* v. *Virginia* (1968), 392 US 636 (88 S Ct 2103, 20 L Ed 2d 1313), cited by defendant, wherein the Court seems to require

some sort of an adversary hearing on questions of obscenity before a search warrant may be issued, is controlling in this case. Here the three officers, who had paid admission and entered the theatre in the line of duty, were faced with a situation in which they had probable cause to believe a crime was being committed in their presence. They were duty-bound to act.

The police officer arrests upon his own determination that a crime has been or is being committed in his presence. It is then for the court on the trial of the case to determine if the act charged is punishable.

From a careful review of the record we are satisfied that the officers who made the arrest did so after viewing the entire movie and that they had sufficient information as to the tests to be applied in order to judge the film obscene. We conclude that the arrest was legal and the seizure of the film was reasonable and lawful, being contemporaneous with a proper arrest. 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 875. *People* v. *Gonzales* (1959), 356 Mich 247.

We must decide, therefore, whether the film is obscene in the constitutional sense as delineated by the Supreme Court of the United States. See *Roth* v. *United States, supra; Redrup* v. *New York* (1967), 386 US 767 (87 S Ct 1414, 18 L Ed 2d 515); *Memoirs* v. *Massachusetts* (1966), 383 US 413 (86 S Ct 975, 16 L Ed 2d 1); *Ginzburg* v. *United States* (1966), 383 US 463 (86 S Ct 942, 16 L Ed 2d 31); *Mishkin* v. *New York* (1966), 383 US 502 (86 S Ct 958, 16 L Ed 2d 56). For us to find that this movie is obscene, we must find that the dominant theme of the movie as a whole appeals to prurient interest in sex, that it is patently offensive because it goes beyond contemporary community

standards relating to the description or representation of sexual matters, and that it is utterly without redeeming social value. *Roth* v. *United States, supra.* Unless we find that these three elements coalesce, we cannot find that it is obscene. *Memoirs* v. *Massachusetts, supra,* p 419. We viewed the film and we find the necessary coalescence here. Therefore, we find the film to be obscene.

The film deals with the problems of a seemingly over-sexed young woman. Although it has a pseudo-psychoanalytical approach, its primary appeal is to a prurient interest in sex. This prurient appeal is the dominant theme of the movie as a whole. The film is utterly without redeeming social value. Further, we find that it goes beyond the contemporary national community standards in its descriptions and representations of sexual matters. We would note here that in making this decision as to whether this film goes beyond the contemporary standards, we took into consideration not just the content of the film but also the impact of the conditions under which this content is conveyed to the viewer. By this we mean that even though the acts and occurrences if they were described in the written word would not be obscene, the visual impact of seeing the same thing acted out in a darkened room with sound accompaniment may cause it to be obscene. We find support for this distinction in *Landau* v. *Fording* (1966), 245 Cal App 2d 820 (54 Cal Rptr 177), *aff'd per curiam* (1967), 388 US 456 (87 S Ct 2109, 18 L Ed 2d 1317) 5–4, *reh den* 389 US 889 (88 S Ct 16, 19 L Ed 2d 199). In *Landau* v. *Fording, supra,* the California court said, p 826:

"At the outset, we wish to make it patently clear that our conclusion is not based on the particular

relationships depicted in 'Un Chant d'Amour'. We recognize that the constitutional guarantee is not confined to the expression of ideas that are conventional or shared by a majority (*Kingsley Pictures Corp.* v. *Regents* [1959], 360 US 684 pp 689, 705 [79 S Ct 1362, 3 L Ed 2d 1512]). We think there is no question that there could be an effective and dramatic film about homosexuality and sadism in prisons unaccompanied by any obscene matters (*Kingsley, supra*) or that a film unquestionably obscene under the applicable standard may not be so when limited to an audience of specialists (*cf. United States* v. *31 Photographs, Etc.* [SD NY, 1957] 156 F Supp 350).

"But from the fact that liberty of expression by means of motion pictures is guaranteed by the First and Fourteenth Amendments, 'it does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places.   *   *   *   Nor does it follow that motion pictures are necessarily subject to the precise rules governing any other particular method of expression. Each method tends to present its own peculiar problems' (*Burstyn, supra*, 343 US pp 502, 503 [72 S Ct p 781, 96 L Ed p 1106]).

"Furthermore, we think that the constitutional protection afforded does not mean that the visual impact of a motion picture as distinguished from other media can be disregarded. Films are obviously different from other forms of expression (*Freedman* v. *Maryland* [1965], 380 US 51, 61 [85 S Ct 734, 13 L Ed 2d 649]). The significance of the motion picture medium is due to the technological features of the particular medium. The unique combination of sight and sound that characterizes a motion picture makes the ideas presented by movies comprehensible to a larger audience than is the case in any other medium except television (see materials cited in 60 Yale LJ, 696, fns. 27 and 28, pp 707, 708, and 42 Cal L Rev, 122, fn. 53, p 128). Even in the absence of sound, movies

assure a high degree of attention and retention.
The focusing of an intense light on a screen and
the semi-darkness of the room where distracting
ideas and suggestions are eliminated contribute to
the forcefulness of movies and their unique effect
on the audience (60 Yale L J, *supra,* p 708).

"Because of the nature of the medium, we think
a motion picture of sexual scenes may transcend
the bounds of the constitutional guarantee long
before a frank description of the same scenes
in the written work. We cannot here disregard the
potent visual impact of the movie in depicting acts
of male masturbation, fellatio, oral copulation,
voyeurism, nudity, sadism and sodomy without any
clear reference or relation to a dominant theme."

See, also, dissenting opinion of Chief Judge Lum-
bard in *United States* v. *A Motion Picture Film
Entitled "I Am Curious—Yellow"* (CA2, 1968),
404 F2d 196.

The defendant also claims error in the instruc-
tions of the trial court. The court's instructions
on appeal are to be considered as a whole. From
a careful reading of the instructions we find no
reversible error.

Defendant asserts other errors which, after care-
ful consideration, we do not deem of merit.

Since the seizure of the film was contemporaneous
with a lawful arrest (see *Grand Rapids City Attor-
ney* v. *Bloss* [1969], 17 Mich App 318), and since
we find the movie "A Woman's Urge" to be obscene
in the constitutional sense, we affirm the conviction
of the defendant.

Affirmed.

Holbrook, J., concurred.

Quinn, P. J. (*dissenting*). I can agree with the
majority opinion in this case on all points except

the determination that the movie referred to is constitutionally obscene.    After viewing the film, I am unable to find that it meets the tests announced in *Roth* v. *United States* (1957), 354 US 476 (77 S Ct 1304, 1 L Ed 2d 1498) and reaffirmed in *Redrup* v. *New York* (1967), 386 US 767 (87 S Ct 1414, 18 L Ed 2d 515).    I therefore vote to reverse.