202 N.W.2d 648 (1972)
STATE of Minnesota, Respondent,
v.
Melvin LEBEWITZ and Harry V. Fick, Appellants.
No. 42791.
Supreme Court of Minnesota.
November 10, 1972.
*649 Malin D. Greenberg, Minneapolis, for appellants.
Keith M. Stidd, City Atty., Edward C. Vavreck, Asst. City Atty., Minneapolis, for respondent.
Considered and decided on the record by the court en banc.

OPINION
ROGOSHESKE, Justice.
Defendants, owner-licensee and manager of a commercial motion picture theater in Minneapolis, were convicted by the Hennepin County Municipal Court, sitting without a jury, of exhibiting an obscene motion picture entitled "The Art of Marriage" in violation of Minneapolis Code of Ordinances, § 870.080.[1] Upon their appeal to the district court, that court, after a trial de novo without a jury and on stipulated facts and exhibits, also found defendants guilty of violating the ordinance. We affirm their conviction.
Conceding, as they must, that if the film is obscene under constitutional standards, its showing violated the express prohibitions of the city's ordinance, defendants essentially contend that, contrary to the findings of both trial courts, the content of the film as commercially shown to the adult public is not obscene as a matter of law, and therefore proscribing its exhibition by imposing criminal sanctions violates their Federal First Amendment rights applicable to the states by reason of the Fourteenth Amendment.
As was the case of some of the still photographs in State v. Hoelscher, Minn., 202 N.W.2d 640 (1972), filed today, this motion picture film explicitly portrays heterosexual intercourse, neither simulated nor suggested but actual (though seemingly tedious), libidinous, copulative, genital sex.[2] The portrayal was accompanied by an introductory and intermittent appearance on the screen of a narrator but mostly by his voice describing the male and female sex organs portrayed and explaining scenes of heterosexual activities and the different positions of actual sexual intercourse demonstrated *650 by two nude allegedly married male and female couples.
Mindful of our sworn duty to enforce First Amendment rights, our review of the record, which included viewing the film to independently determine the issue of obscenity vel non as prescribed by Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), proceeds on the fundamental that the First Amendment prohibits criminal prosecution for the public dissemination of any form of alleged obscene materials, including moving pictures,[3] which does not satisfy the definition of obscenity as set forth in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); and where applicable, Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). Applying, then, the constitutional standards announced by decisions of the United States Supreme Court as reviewed in State v. Hoelscher, supra, we hold that the content of the film commercially exhibited to the general adult public constitutes hard-core pornography and the city's criminal prosecution of defendants responsible for its exhibition is constitutionally permissible. See, Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). We are fully persuaded that under the Roth-Memoirs test[4] the film has the required appeal to a prurient interest of the average person in sex.[5] Nor do we entertain any doubt that an explicit motion picture portrayal of nude couples engaged in sexual intercourse is patently offensive because it goes beyond customary limits of candor and affronts contemporary community standards.
We reject defendants' only plausible argumentthat the testimony of defendant Lebewitz and the unrebutted opinion evidence of a former municipal judge and practicing lawyer of wide experience in handling divorce cases compels a finding that the film has a modicum of redeeming social value. We concur in the finding of the district court, contrary to defendants' claim, that the film is utterly without such value and that the guise of educational value under which it is presented is mere pretense to commercially exploit its prurient appeal. Defendants did not limit the showing of this film to any specialized group concerned with physiological and psychological sex education, and as noted in footnote 5, supra, the protracted portrayals of sexual intercourse are manifestly calculated to appeal to the average person's prurient interest in sex. More significantly, defendants' advertising as an effort to limit viewers to adults over 21 and to those who would not "be offended by an adult sex educational film" declared that the film was presented by the "Nevada Institute for Family Study," but not one iota of evidence was presented to establish the educational status of that organization nor, indeed, its very existence. Compare, United States v. 35 mm. Motion Picture Film Entitled "Language of Love," 432 F.2d 705 (2 Cir. 1970). More importantly, the narration accompanying the scenes portrayed amounted to no more than a description *651 of the obvious. The actors spoke not a word, and there was no reference during the demonstrations to affection, love, respect, marital discipline, or any suggestion or even hint by the narrator or the conduct of the actors that marital sexual behavior is, or should be, governed by any moral code. Nearly everything said by the narrator during the actors' portrayals could in fact apply to the beasts of the field as well as to human beings. We cannot escape the conclusion reached by the trial judge that the film is utterly without redeeming social value and was exhibited by defendants for profit with full awareness that its appeal to the average person aware of contemporary standards of morality would be anticipated, vicarious, sexual pleasure.
Defendants mistakenly argue that a reversal is required by Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). As was more fully set out in State v. Hoelscher, supra, the Roth-Memoirs standard has not been superseded by Redrup.[6] This is especially so where, as here, the alleged obscene material constitutes so-called hard-core pornography which the United States Supreme Court has characterized as a definition of obscenity "more stringent than the Roth definition." Mishkin v. New York, 383 U.S. 502, 508, 86 S.Ct. 958, 963, 16 L.Ed.2d 56, 61 (1966).
Although the United States Supreme Court has not yet precisely defined "hard-core pornography,"[7] it seems reasonable to assume, as we do in State v. Hoelscher, supra, that the court either now has or will include in its definition at least the substance of the "market" definition of that phrase proposed by the Commission on Obscenity and Pornography, namely, that such pornography is "limited to photographic reproductions of sexual intercourse depicting vaginal, anal, or oral penetration." The Report of the Commission on Obscenity and Pornography, (1970), p. 18. Thus, in our view, only where the alleged obscenity does not rise to the level of hard-core pornography are the supplemental standards of pandering, obtrusiveness, and exposure to juveniles added by Redrup to be considered. We are aware of the United States Supreme Court cases involving films which reversed criminal convictions on the basis that the films depicted mere suggestions of sexual activity or at most fleeting but indiscernibly explicit episodes.[8] None, however, portray explicit *652 sexual activity of the kind here or similarly depicted in Landau v. Fording, 245 Cal. App.2d 820, 54 Cal.Rptr. 177 (1966), which the court, as noted in State v. Hoelscher, supra, significantly summarily affirmed. 388 U.S. 456, 87 S.Ct. 2109, 18 L.Ed.2d 1317 (1967).
Finally, we cannot agree with the district court's finding that the defendants were guilty of pandering as defined in Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), and its progeny in soliciting patrons for the movie "The Art of Marriage." Rather, defendants' advertisements were directedwhether adequately or notto prevent exposure to juveniles and to warn the adult public of the movie's contents.[9] Since what is exhibited is hard-core pornography, exhibition of the movie does not enjoy constitutional protection even though pandering or the other elements outlined in Redrup are not present.
Affirmed.
OTIS, Justice (dissenting).
Whatever else may be said of the motion picture "The Art of Marriage," it certainly does not, in my opinion, appeal to the average person's prurient interest. On the contrary, it is a tedious and uninspired portrayal of sexual activity which is quite obviously simulated. If there is anything remotely romantic or erotic about it, I confess it has eluded me. It is about as sexually provocative as a documentary on techniques for artificially inseminating cattle. To classify the film as hard-core pornography is to ascribe to it a salacious appeal which is wholly undeserved.
In any case, if the film were to be shown only to bona fide clients for marriage counseling, it quite obviously would not be obscene but might well be of substantial benefit to couples with marriage problems.[1] Because it was not privately shown for this purpose but publicly exhibited in a theater, the majority now seeks to carve out an exception to the rule adopted in Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967), by holding that the Redrup case does not apply to motion pictures, notwithstanding that the material was neither pandered, obtrusive, nor exhibited to juveniles. No authority is cited by the majority for the conclusion that motion pictures are an exception to the Redrup rule. Until and unless the United States Supreme Court overrules that decision or holds that it does not apply to photographic material, it is not our prerogative to ignore that court's interpretation of what material enjoys First Amendment protection, whether we agree with the court or not.
The Supreme Court has repeatedly applied Redrup to hard-core pornography. Cain v. Commonwealth, 437 S.W.2d 769 (Ky.1969), reversed, 397 U.S. 319, 90 S.Ct. 1110, 25 L.Ed.2d 334 (1970); People v. Bloss, 18 Mich.App. 410, 171 N.W.2d 455 (1969), reversed, 402 U.S. 938, 91 S.Ct. 1615, 29 L.Ed.2d 106 (1971); State v. Hartstein, 469 S.W.2d 329 (Mo.1971), reversed, 404 U.S. 988, 92 S.Ct. 531, 30 L. Ed.2d 539 (1971); Robert Arthur Management *653 Corp. v. State, 220 Tenn. 101, 414 S. W.2d 638 (1967), reversed, 389 U.S. 578, 88 S.Ct. 691, 19 L.Ed.2d 777 (1968); United States v. West Coast News Co., 357 F.2d 855 (6 Cir. 1966), reversed sub nom. Aday v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967); Books, Inc. v. United States, 358 F.2d 935 (1 Cir. 1966), reversed, 388 U.S. 449, 87 S.Ct. 2098, 18 L.Ed.2d 1311 (1967); State ex rel. Londerholm v. A Quantity of Copies of Books, 197 Kan. 306, 416 P.2d 703 (1966), reversed, 388 U.S. 452, 87 S.Ct. 2104, 18 L.Ed.2d 1314 (1967); State v. Hoyt, 286 Minn. 92, 174 N.W.2d 700 (1970), reversed, 399 U.S. 524, 90 S.Ct. 2241, 26 L. Ed.2d 782 (1970). Although I do not concede that the film "The Art of Marriage" is hard-core pornography, in my opinion whether it is or not, it cannot constitutionally be the subject of this prosecution.
I would reverse.
MacLAUGHLIN, Justice (dissenting).
While I would prefer to do otherwise, I believe we are required, pursuant to the decisions of the United States Supreme Court, to hold the exhibiting of this motion picture to be constitutionally permissible. I concur with the opinion of Mr. Justice Otis that the motion picture, taken as a whole, does not appeal to the average person's prurient interest in sex and that the motion picture is not utterly without redeeming social value. I also agree that the film is not hard-core pornography, and I disagree with the majority that the contents of this film can be compared with the still photographs in State v. Hoelscher, Minn., 202 N.W.2d 640 (1972), filed herewith.
I do not wholly agree with the interpretation given the Redrup opinion by Mr. Justice Otis, and for that reason I have today voted to affirm the convictions in State v. Hoelscher, supra, wherein we had overt, explicit, pictorial depiction of sexual activities which, in my opinion, meet the Roth-Memoirs test for obscenity and are without doubt hard-core pornography.
TODD, Justice (dissenting).
I concur in the dissent of Mr. Justice MacLAUGHLIN.
NOTES
[1] The ordinance in pertinent part provides: "It is unlawful for any person knowingly to exhibit * * * any obscene * * * motion picture film * * *. `Obscene' for the purpose of this section is defined as follows: Whether to the average person, applying contemporary standards, the dominant theme of the material taken as a whole appeals to prurient interests."
[2] Although actual vaginal penetration was not explicitly portrayed, the scenes viewed in the context of the intention of the producer as advertised by the exhibitor and as expressed by the narrator would not, we believe, be regarded by the average viewer as merely simulating penetration. Moreover, the notion that the sequences of sexual intercourse were simulated and not actual is contradicted both by the defendants' advertisements of the film and by the testimony of defendants' witnesses themselves.
[3] Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952).
[4] Under this test, material is obscene if three criteria are satisfied: (1) To the average person the dominant theme of the material taken as a whole appeals to prurient interest in sex; (2) the material is patently offensive because it affronts contemporary community standards relating to a description of sexual matters; and (3) the material is utterly without redeeming social value.
[5] While the protracted scenes depicting various positions of sexual intercourse may be characterized as "tedious" in the sense of being boring and mentally tiring to an audience of judges engaged in discharging a distasteful duty, we entertain no doubt that such prolonged portrayals were deliberately included to stimulate the erotic response of an audience of young adults which the exhibitor anticipated would, and in fact did, uncomplainingly pay the $3 admission price.
[6] The standard laid down in Roth and Memoirs was cited with approval in Stanley v. Georgia, 394 U.S. 557, 568, 89 S.Ct. 1243, 1249, 22 L.Ed.2d 542, 551 (1969). The Roth test of obscenity per se still has vitality. United States v. Reidel, 402 U.S. 351, 354, 91 S.Ct. 1410, 1412, 28 L.Ed.2d 813, 816 (1971). See, also, Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288, 294 (S.D.N.Y. 1969), affirmed sub nom. New York Feed Co. Inc. v. Leary, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970); Shinall v. Worrell, 319 F.Supp. 485, 489 (E.D.N.C. 1970); A. B. C. Books, Inc. v. Benson, 315 F.Supp. 695, 703 (M.D.Tenn.1970), judgment vacated on other grounds and case remanded, 401 U.S. 988, 91 S.Ct. 1228, 28 L.Ed.2d 525 (1971).
[7] See, State v. Hoelscher, Minn., 202 N.W. 2d 640 (1972), filed today.
[8] Hartstein v. Missouri, 404 U.S. 988, 92 S.Ct. 531, 30 L.Ed.2d 539 (1971), reversing 469 S.W.2d 329 (Mo.1971), closeups of nude women and one scene suggesting homosexual behavior in the movie "Night of Lust"; Cain v. Kentucky, 397 U.S. 319, 90 S.Ct. 1110, 25 L.Ed. 2d 334 (1970), reversing 437 S.W.2d 769 (Ky.1969), the most explicit sexual activity being, apparently, a man caressing the woman's abdomen with kisses in the movie "I, A Woman"; I. M. Amusement Corp. v. Ohio, 389 U.S. 573, 88 S.Ct. 690, 19 L.Ed.2d 776 (1968), reversing 10 Ohio App.2d 153, 226 N.E.2d 567 (1966), a documentation of pinups or women nude from the waist up with one scene of actions suggesting lesbian behavior; Robert-Arthur Management Corp. v. Tennessee, 389 U.S. 578, 88 S.Ct. 691, 19 L.Ed. 2d 777 (1968), reversing 220 Tenn. 101, 414 S.W.2d 638 (1967), material considered obscene in movie "Mondo Freudo" is not discussed; Bloss v. Michigan, 402 U.S. 938, 91 S.Ct. 1615, 29 L.Ed.2d 106 (1971), reversing 18 Mich.App. 410, 171 N.W.2d 455 (1969), material considered obscene in movie "A Woman's Urge" is not discussed.
[9] Whether it is constitutionally permissible to display any sexually oriented films in a commercial theater when surrounded by adequate notice to the public of their nature short of pandering and by reasonable protection against exposure to juveniles is an important issue which has neither been raised nor adjudicated in this case. We note that the United States Supreme Court has requested argument on this issue and granted certiorari in Paris Adult Theatre, I v. Slaton, 408 U.S. 921, 92 S.Ct. 2487, 33 L.Ed.2d 331 (1972). See, Slaton v. Paris Adult Theatre I, 228 Ga. 343, 185 S.E.2d 768 (1971); and cf. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971).
[1] While the narrator's discussion was explicit, it was, nevertheless, presented with clinical detachment.