202 N.W.2d 640 (1972)
STATE of Minnesota, Respondent,
v.
Robert O. CARLSON, Appellant.
STATE of Minnesota, Respondent,
v.
Russell A. HOELSCHER, Appellant.
Nos. 43238, 43239 and 43241-43243.
Supreme Court of Minnesota.
November 10, 1972.
Rehearings Denied December 26, 1972.
*642 Stacker, Silverstein, Burke & Radsom, St. Paul, for appellants.
Warren Spannaus, Atty. Gen., St. Paul, William B. Randall, County Atty., Daniel A. Klas, City Atty., Pierre N. Regnier, Asst. City Atty., St. Paul, for respondent.
Heard before KNUTSON, C. J., and KELLY, TODD, and MacLAUGHLIN, JJ. Reconsidered and decided on the record by the court en banc.

OPINION
TODD, Justice.
Defendants appeal from convictions in the Ramsey County District Court following a trial de novo on appeal from convictions in the St. Paul Municipal Court on charges of selling obscene books and displaying obscene movie films in violation of St. Paul Legislative Code, § 476.01. The fact of sale and the knowledge of defendants as to the contents of the merchandise involved are not disputed. The only issue presented to this court is whether the materials in question are obscene in a constitutional sense. We affirm those convictions which are based on evidentiary materials before this court and reverse those convictions which are based upon evidentiary materials not before us.
In Appeal No. 43238, defendant Robert Carlson was charged with selling to police officers on January 13, 1970, a booklet entitled, "Action," Vol. 10. In Appeal No. 43239, he was charged on two separate complaints of selling to a police officer on January 19, 1970, two booklets, one entitled "Color Climax Pornography," No. 6, and the other entitled "Night Life," No. 17. In Appeal No. 43242, defendant Russell Hoelscher was charged with exhibiting an obscene movie film on April 2, 1970, at 919 East Seventh Street in the city of St. Paul. The original arrests and convictions were based upon alleged violations of St. Paul Legislative Code, § 476.01, which provides as follows:
"Any person who shall knowingly exhibit, sell or offer to sell any obscene, lewd, lascivious or filthy book, pamphlet, picture, motion picture, film, paper, letter, writing, print or other matter of indecent character shall be guilty of a misdemeanor."
"Action," Vol. 10, is a paper booklet consisting of 14 pages and a photographic front and back cover. "Color Climax Pornography," No. 6, is a paper booklet consisting *643 of 30 pages and a photographic front and back cover, and "Night Life," No. 17, is a similar paper booklet consisting of 14 pages and a photographic front and back cover. There is no written textual material in any of the booklets except the names appearing on the front covers. The front and back covers and the interior pages consist of photographs of men and women either nude, almost nude, or partially clothed, engaged in sexual activity. The activity is explicit and actual, and is not simulated. The couples or groups depicted are engaged in intercourse, oral-genital sexual acts, and anal-genital sexual acts. The movie film is untitled and simply portrays a man and a woman engaged in sexual activity which, although falling short of explicit intercourse or sodomy, constitutes graphic and explicit sexual contact.
At the time of trial, defendants admitted the sales at the time charged and the exhibition of the film at the time charged and admitted knowing the general nature of the books and movie. They based their defense on the grounds that the materials in question are not obscene and therefore they have not violated St. Paul Legislative Code, § 476.01, quoted above.
In considering the defense raised in this case, this court is obliged to follow the United States Constitution as interpreted by the United States Supreme Court. On past occasions we have had the opportunity of expressing the opinion of this court that certain materials submitted to it for consideration were obscene and in violation of particular local ordinances. State v. Hoyt, 286 Minn. 92, 174 N.W.2d 700 (1970). That case involved written materials and pictures of nudes in various positions, not explicitly depicting actual sexual relations. Our affirmance of that conviction was reversed by the United States Supreme Court in a per curiam opinion, Hoyt v. Minnesota, 399 U.S. 524, 90 S.Ct. 2241, 26 L. Ed.2d 782 (1970), citing Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L. Ed.2d 515 (1967).
Defendants in this case contend that we are compelled to reverse the convictions based on the materials in evidence before us because of the Redrup decision. We hold that the position of defendants is untenable after consideration of the evidentiary materials involved in this case.
1. The United States Supreme Court in a series of decisions has attempted to spell out certain rules applicable to the consideration of obscenity cases. One of the leading cases in this field is Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). In that case, Roth, a New York businessman, was charged with using the mails to solicit sales of obscene materials in violation of the Federal obscenity statute. 18 U.S.C.A. § 1461. His conviction was affirmed. In that case the majority of the court explicitly rejected the argument that obscenity is within the area of constitutionally protected speech or press under the First and Fourteenth Amendments. Subsequent cases have not changed this express statement but have reaffirmed it. In United States v. Reidel, 402 U.S. 351, 354, 91 S.Ct. 1410, 1412, 28 L.Ed.2d 813, 816 (1971), the court held:
"* * * Roth has not been overruled. It remains the law in this Court and governs this case."[1]
In the Roth case the supreme court formulated a test to be applied in determining whether material is obscene (354 U.S. 489, 77 S.Ct. 1311, 1 L.Ed.2d 1509):
"* * * [W]hether to the average person, applying contemporary community *644 standards, the dominant theme of the material taken as a whole appeals to prurient interest."
Our court recognized and adopted this test of obscenity in State v. Carlson, 291 Minn. 368, 192 N.W.2d 421 (1971).
The standards enunciated by the court in the Roth case were not necessary to the decision, as the issue of obscenity was not before the court. However, in cases which followed Roth the court began the process of developing and expanding the standard expressed in Roth. In Manual Enterprises, Inc. v. Day, 370 U.S. 478, 489, 82 S.Ct. 1432, 1438, 8 L.Ed.2d 639, 647 (1962), the court said:
"* * * [Roth] being ultimately concerned only with the question whether the First and Fourteenth Amendments protect material that is admittedly obscene, the Court there had no occasion to explore the application of a particular obscenity standard."
The court then went on to hold that in addition to appealing to prurient interest the material must also be patently offensive.
Two years later in Jacobellis v. Ohio, 378 U.S. 184, 191, 84 S.Ct. 1676, 1680, 12 L.Ed.2d 793, 800 (1964), the court further qualified the Roth test by articulating a standard recognized in Roth as the basis for excluding obscenity from constitutional protectionnamely, the material must be "utterly without redeeming social importance." In addition, the court held that the community standards must be national rather than local, something which had been indicated in Manual Enterprises, Inc. v. Day, supra.
2. Following the Jacobellis decision, the court sought to pull its decisions together in the case of A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General [Fanny Hill], 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1, 5 (1966):
"* * * Under this definition [the Roth test], as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."
The dust of confusion which "Fanny Hill" was supposed to dispose of had not even settled when it was stirred up anew, since the court on the same day handed down the decision of Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L. Ed.2d 31 (1966). In the Ginzburg case, the court seemed to indicate that pandering, or distributing material with the leer of the sensualist, could be relevant in determining whether the material itself was in fact obscene. The subjective nature of this test provoked a sharp dissent from Mr. Justice Harlan who pointed out that the emphasis had now shifted from the material to the mind. Mr. Justice Stewart also sharply dissented in the Ginzburg case, pointing out "[c]ensorship reflects a society's lack of confidence in itself. It is a hallmark of an authoritarian regime." 383 U.S. 498, 86 S.Ct. 956, 16 L.Ed.2d 53.
3. The following year the court again tried to tie its opinions together in a short per curiam opinion, Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L. Ed.2d 515 (1967). The court, without expressly reaffirming the standards, repeated the position subscribed to by some of its members in "Fanny Hill" that the three elements listed therein must coalesce before material could be found obscene. It further indicated that other factors to be considered were whether or not the statute in question reflected a specific and limited state concern for juveniles; whether sales of the materials constituted as assault on individual privacy by publication in a manner *645 so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it; and evidence of pandering.
Defendants argue that the Redrup tests are additional tests to be established by the prosecution in order to determine the issue of obscenity. The prosecution argues that the Redrup decision merely establishes elements to be considered if one of the elements of the Roth test is lacking in some respect. We hold that the Redrup elements are to be considered in each case but are not determinative of the issue of obscenity if one or more of them is lacking.
The United States Supreme Court has summarily reversed 29 obscenity convictions on the authority of Redrup v. New York, supra. Eleven cases were not reported in the inferior court, and two more were reported but undescriptive, thus giving no insight into the United States Supreme Court's decision.[2]
Seven times the United States Supreme Court has overruled obscenity convictions arising from the publication of various novels.[3] Apparently the rulings demonstrate that the printed word, no matter how tawdry, is not obscene. Such rulings are not precedent for the instant cases where no text of any kind accompanies the photographs.
Sex movies were the subject of five per curiam reversals by the United States Supreme Court.[4] The lower court reports of *646 these cases describe a great deal of nudity and sexual behavior. The activity, however, does not include actual copulation or oral-genital contact. When sexual intercourse was depicted, it was either suggested or simulated. None of the five movies included graphic and explicit sexual contact.
Five United States Supreme Court reversals based on Redrup deal with magazines and are, therefore, the most instructive of the 29 per curiam reversals. The Redrup case involved what the Report of the Commission on Obscenity and Pornography (1970), p. 98, termed "girlie" magazines. Nudist magazines which refrained from even implied sexual activity were declared not obscene in two cases: Felton v. City of Pensacola, 390 U.S. 340, 88 S.Ct. 1098, 19 L.Ed.2d 1220 (1968), reversing 200 So.2d 842 (Fla.App.1967); and Potomac News Co. v. United States, 389 U.S. 47, 88 S.Ct. 233, 19 L.Ed.2d 46, reversing United States v. 56 Cartons Containing 19,500 Copies of a Magazine Entitled "Hellenic Sun," 373 F.2d 635 (4 Cir. 1967). These cases stand for the proposition that pictures of nude men and women are not obscene. In three cases the court was confronted with magazines which contained pictures of men and women posed to accent their exposed genital areas.[5] A great deal of sexual activity was implied or simulated, but the consummation of the suggested acts was not depicted.[6] The court's ruling indicates that nudity is not obscene no matter how blatant its exhibition.
4. To summarize the post-Redrup per curiam reversals, pictures of nude men and women are not obscene even when the purpose of the picture is to suggest sexual activity by the graphic depiction of the sexual organs. The United States Supreme Court, however, has not reversed a finding that graphic and explicit photographs of actual sexual activity are obscene.
5. If any pattern has developed from the decisions, it appears that hard-core pornography is outside of the scope of Redrup, whatever its application is claimed to be.[7] Mr. Justice Stewart in his dissent *647 in the Ginzburg case indicated that hard-core pornography is obscene and is not protected. He defined hard-core pornography as follows (383 U.S. 499, note 3, 86 S. Ct. 957, 16 L.Ed.2d 54):
"* * * Such materials include photographs, both still and motion picture, with no pretense of artistic value, graphically depicting acts of sexual intercourse, including various acts of sodomy and sadism, and sometimes involving several participants in scenes of orgy-like character. They also include strips of drawings in comic-book format grossly depicting similar activities in an exaggerated fashion. There are, in addition, pamphlets and booklets, sometimes with photographic illustrations, verbally describing such activities in a bizzarre manner with no attempt whatsoever to afford portrayals of character or situation and with no pretense to literary value. All of this material * * * cannot conceivably be characterized as embodying communication of ideas or artistic values inviolate under the First Amendment."
When confronted with hard-core pornography, the United States Supreme Court will affirm the lower court[8] or deny certiorari.[9] We adopt the above-quoted definition of hard-core pornography and hold that such materials have no constitutional protections.
6. The materials clearly are within the scope of the Roth test for obscenity. The evidence in these cases discloses no facts which would involve violation of the additional standards suggested for consideration by the Redrup decision. Nevertheless, in applying to the evidence the definition of hard-core pornography adopted herein, this court has no difficulty in determining that the materials are hard-core pornography, are obscene, and are not constitutionally protected.[10]
The convictions of Robert Carlson in Appeal No. 43238 and Appeal No. 43239, and of Russell Hoelscher in Appeal No. 43242 are hereby affirmed. With respect to the convictions of Russell Hoelscher in Appeal No. 43241 and Appeal No. 43243, the judgments are reversed. It appears from the record that the evidence in these cases was missing from the files at the time the matter was presented to this court. Since this court is required to review the materials in question under the Jacobellis decision cited above, we must necessarily reverse the convictions and dismiss these charges since there is no evidence presented to this court for review and the record does not contain any testimony describing the contents of the missing exhibits.
*648 OTIS, Justice (dissenting).
With respect to the Hoelscher conviction, all that is depicted is a nude couple engaged in sexual foreplay. No intercourse or perversion is portrayed. The film may be obscene but in my opinion it is not hard-core pornography.
The pictures involved in the Carlson prosecutions, on the other hand, are unquestionably hard-core pornography. Nevertheless, for the reasons set forth in my dissent in State v. Lebewitz, Minn., 202 N. W.2d 648, released herewith, I am persuaded that the decision of the United States Supreme Court in Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967), confers on the material in each of the cases First Amendment protection, absent any of the three circumstances described in the Redrup opinion. Accordingly, I feel compelled to dissent.
NOTES
[1] The court, in United States v. Thirty-seven (37) Photographs, 402 U.S. 363, 376, 91 S.Ct. 1400, 1408, 28 L.Ed.2d 822, 834 (1971), wrote: "* * * As we held in Roth v. United States, 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498] (1957), and reiterated today in [United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971)], obscenity is not within the scope of First Amendment protection."
[2] The Report of the Commission on Obscenity and Pornography (1970), p. 98, states that as of June 1970 actual sexual activity "is seldom depicted" in "adult magazines." Since the facts involved in the 11 unreported and 2 undescriptive decisions preceded 1970, it is a fair assumption that those cases did not concern what the report describes as hardcore pornography. The decisions reversing those cases are: Weiner v. California, 404 U.S. 988, 92 S.Ct. 534, 30 L.Ed.2d 539 (1971); Walker v. Ohio, 398 U.S. 434, 90 S.Ct. 1884, 26 L.Ed.2d 385 (1970); Carlos v. New York, 396 U.S. 119, 90 S.Ct. 395, 24 L.Ed.2d 303 (1969) (reported but undescriptive); Henry v. Louisiana, 392 U.S. 655, 88 S.Ct. 2274, 20 L.Ed.2d 1343 (1968) (reported but undescriptive); Chance v. California, 389 U.S. 89, 88 S.Ct. 253, 19 L.Ed.2d 256 (1967); Conner v. City of Hammond, 389 U.S. 48, 88 S.Ct. 234, 19 L.Ed.2d 47 (1967); Schackman v. California, 388 U.S. 454, 87 S.Ct. 2107, 18 L.Ed.2d 1316 (1967); Avansino v. New York, 388 U.S. 446, 87 S.Ct. 2093, 18 L.Ed.2d 1308 (1967); Sheperd v. New York, 388 U.S. 444, 87 S.Ct. 2093, 18 L.Ed.2d 1306 (1967); Cobert v. New York, 388 U.S. 443, 87 S.Ct. 2092, 18 L.Ed.2d 1305 (1967); Ratner v. California, 388 U.S. 442, 87 S.Ct. 2092, 18 L.Ed. 2d 1304 (1967); Friedman v. New York, 388 U.S. 441, 87 S.Ct. 2091, 18 L.Ed.2d 1303 (1967); Keney v. New York, 388 U.S. 440, 87 S.Ct. 2091, 18 L.Ed.2d 1302 (1967).
[3] Childs v. Oregon, 401 U.S. 1006, 91 S. Ct. 1248, 28 L.Ed.2d 542 (1971), reversing 431 F.2d 272 (9 Cir. 1970); Hoyt v. Minnesota, 399 U.S. 524, 90 S.Ct. 2241, 26 L.Ed.2d 782, reversing 286 Minn. 92, 174 N.W.2d 700 (1970); Mazes v. Ohio, 388 U.S. 453, 87 S.Ct. 2105, 18 L.Ed.2d 1315 (1967), reversing 7 Ohio St.2d 136, 218 N.E.2d 725 (1966); A Quantity of Copies of Books v. Kansas, 388 U.S. 452, 87 S.Ct. 2104, 18 L.Ed.2d 1314 (1967), reversing State ex rel. Londerholm v. A Quantity of Copies of Books, 197 Kan. 306, 416 P.2d 703 (1966); Books, Inc. v. United States, 388 U.S. 449, 87 S.Ct. 2098, 18 L.Ed.2d 1311 (1967), reversing 358 F.2d 935 (1 Cir. 1966); Corinth Publications, Inc. v. Wesberry, 388 U.S. 448, 87 S.Ct. 2096, 18 L.Ed.2d 1310 (1967) (without reference to Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 [1967]), reversing 221 Ga. 704, 146 S.E.2d 764 (1966); Aday v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967), reversing 357 F.2d 855 (6 Cir. 1966).
[4] Hartstein v. Missouri, 404 U.S. 988, 92 S.Ct. 531, 30 L.Ed.2d 539 (1971), reversing 469 S.W.2d 329 (Mo.1971); Cain v. Kentucky, 397 U.S. 319, 90 S.Ct. 1110, 25 L.Ed.2d 334 (1970), reversing 437 S.W. 2d 769 (Ky.1969); Robert-Arthur Management Corp. v. Tennessee ex rel. Canale, 389 U.S. 578, 88 S.Ct. 691, 19 L. Ed.2d 777 (1968), reversing 220 Tenn. 101, 414 S.W.2d 638 (1966); I. M. Amusement Corp. v. Ohio, 389 U.S. 573, 88 S.Ct. 690, 19 L.Ed.2d 776 (1968), reversing 10 Ohio App.2d 153, 226 N.E.2d 567 (1966). The report of Bloss v. Michigan, 402 U.S. 938, 91 S.Ct. 1615, 29 L.Ed.2d 106 (1971), reversing 18 Mich. App. 410, 171 N.W.2d 455 (1969), does not indicate the content of the film. However, in view of the Report of the Commission on Obscenity and Pornography finding that hard-core sexual activity in movies was rare in 1970, it is probable that such activity was not shown in the theatres of Grand Rapids, Michigan, in 1966.
[5] Burgin v. South Carolina, 404 U.S. 806, 92 S.Ct. 46, 30 L.Ed.2d 39 (1971), reversing 255 S.C. 237, 178 S.E.2d 325 (1970); Bloss v. Dykema, 398 U.S. 278, 90 S.Ct. 1727, 26 L.Ed.2d 230 (1970), reversing Grand Rapids City Attorney v. Bloss, 17 Mich.App. 318, 169 N.W.2d 367 (1968); Central Magazines Sales, Ltd. v. United States, 389 U.S. 50, 88 S.Ct. 235, 19 L.Ed.2d 49, reversing United States v. 392 Copies of a Magazine Entitled "Exclusive," 373 F.2d 633 (4 Cir. 1967).
[6] Such material has been described as follows in United States v. 392 Copies of a Magazine Entitled "Exclusive," 373 F.2d 633, 634 (4 Cir. 1967), reversed sub nom. Central Magazines Sales, Ltd. v. United States, 389 U.S. 50, 88 S.Ct. 235, 19 L. Ed.2d 49 (1967): "Exclusive is a collection of photographs of young women. In most of them, long stockings and garter belts are employed to frame the public area and to focus attention upon it. A suggestion of masochism is sought by the use in many of the pictures of chains binding the model's wrists and ankles. Some of the seated models, squarely facing the camera, have their knees and legs wide-spread in order to reveal the genital area in its entirety. In one of the pictures, all of these things are combined: The model, clad only in a framing black garter belt and black stockings is chained to a chair upon which she is seated, facing the camera, with one knee elevated and both spread wide."

The description aptly fits most of the material considered in State v. Getman, 293 Minn. 11, 195 N.W.2d 827 (1972). The description, however, does not apply to the instant case.
[7] Mr. Justice Harlan, dissenting in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General [Fanny Hill], 383 U.S. 413, 457, 86 S.Ct. 975, 997, 16 L.Ed.2d 1, 27 (1966), stated: "Federal suppression of allegedly obscene matter should, in my view, be constitutionally limited to that often described as `hard-core pornography.' To be sure, that rubric is not a self-executing standard, but it does describe something that most judges and others will `know * * * when [they] see it' (Stewart, J., in Jacobellis v. Ohio, 378 U.S. 184, 197 [84 S.Ct. 1676, 683, 12 L.Ed.2d 793, 804 (1964)]) and that leaves the smallest room for disagreement between those of varying tastes."
[8] Landau v. Fording, 388 U.S. 456, 87 S. Ct. 2109, 18 L.Ed.2d 1317 (1967), affirming 245 Cal.App.2d 820, 54 Cal.Rptr. 177 (1966).
[9] State v. Amato, 49 Wis.2d 638, 183 N.W. 2d 29 (1971), certiorari denied, 404 U.S. 1063, 92 S.Ct. 735, 30 L.Ed.2d 751 (1972); Wilhoit v. United States, 279 A. 2d 505 (D.C.App.), certiorari denied, 404 U.S. 994, 92 S.Ct. 538, 30 L.Ed.2d 546 (1971).
[10] The film involved in Appeal No. 43242, upon which the conviction of Russell Hoelscher is based, shows no explicit sexual intercourse or sodomy. However, the actions depicted therein fit within the terms of "graphic and explicit sexual contact." The material violates the tests provided by Roth v. United States, footnote 1, supra, and "Fanny Hill," footnote 7, supra.