THE STATE OF OHIO, APPELLEE, *v.* BOYD, APPELLANT.

[Cite as State v. Boyd (1972), 35 Ohio App. 2d 147.]

148

(No. 1450—Decided December 18, 1972.)

Mr. *Ted Iorio,* for appellant.

Mr. *Lawrence S. Huffman,* prosecuting attorney, for appellee.

GUERNSEY, J. This is an appeal by defendant, Robert Boyd, from a judgment of the Common Pleas Court of Allen County, Ohio, convicting and sentencing him for a violation of R. C. 2903.11 (130 Ohio Laws 658), in that on September 13, 1969, he "did unlawfully and knowingly have in his possession for the purpose of exhibition to a minor under the age of eighteen years, a motion picture film which is obscene, indecent, and which manifestly tends to corrupt the morals of such youth," and for a violation of R. C. 2905.34 (131 Ohio Laws 673), in that on September 17, 1969, he "did unlawfully, and knowingly have in his possession and under his control an obscene, lewd and lascivious motion picture film for the purpose of exhibition and dissemination of said obscene, lewd and lascivious motion picture film."

It appears undisputed in evidence, among other things, that Boyd was, on both dates, the manager of an outdoor movie theater located near Lima, Ohio; that on the earlier date he caused to be exhibited in the time interval between the showing of two feature films and together with other associated advertising material advertising coming attractions a film trailer of approximately ten minutes duration advertising the movie "Starlet"; that the trailer depicted, or graphically suggested, the happening of a variety of sexual acts occurring between both those of the opposite and of the same sex and was accompanied by a matching sound track replete with double entendre aiding in the suggestion of what one might conclude the acts depicted as portraying; that neither in the newspaper advertising of the theater, nor on the premises thereof was any mention made that anything of such nature was to be shown that evening or that the audience should be in any manner re-

stricted; that no other forewarning was given of the showing of the trailer; that in one car and seeing the trailer shown were three boys of less than eleven, nine and seven years of age, respectively, in another car and seeing the trailer shown was a boy of eleven years of age, and in the theater were many other young children as well as adults; that on September 17, 1969, Boyd was met on the steps of the projection booth of the theater by a deputy sheriff, was handed a search warrant for the trailer, which Boyd then got from the floor of the projection booth, instructed the projectionist to remove advertising clips from it, which was then done, and the film trailer was then taken into the possession of the deputy sheriff; that the film trailer was subsequently returned to Boyd pursuant to order of a federal district court and concurrent with its return a subpoena duces tecum was served on Boyd to produce the film at the trial of the charges against him.

In his appeal Boyd makes five assignments of error which we will consider in the chronology of the trial.

*Assignment of Error No. II.* "The trial court erred in permitting the introduction into evidence of the motion picture trailer 'Starlet' because it was seized without a prior adversary hearing having first been held and pursuant to an invalid search warrant."

*Assignment of Error No. III.* "The trial court erred in overruling appellant's motion to quash a subpoena duces tecum requiring him to bring into court the motion picture trailer 'Starlet' which was then admitted into evidence."

We consider these two assignments of error together because they involve, in their essentials, much of the same matter, the argument being that the trailer was illegally seized, properly returned by the federal court, and once ordered returned could not be ordered produced pursuant to subpoena duces tecum. To dispose of these contentions we need only assume, without deciding, that the defendant is right in his contention that evidence ordered returned because illegally seized may not be ordered produced pursuant to such subpoena. However, it does not follow that evidence which has been legally seized and then re-

turned may not be ordered produced pursuant to such subpoena.

We have examined the decisions of the United States Supreme Court carefully, with particular emphasis on its decisions in the cases of *Marcus* v. *Search Warrant* (1961), 367 U. S. 717; *A Quantity of Books* v. *Kansas* (1964), 378 U. S. 205; and *Freedman* v. *Maryland* (1965), 380 U. S. 51, and notwithstanding that these cases set forth limitations on seizure *as contraband* and for destruction we find no decision which would indicate that one copy of a film alleged to be obscene may not be seized without a prior adversary hearing to be used *as evidence* in a prosecution for its possession. The Supreme Court of Ohio has recognized this distinction in *State* v. *Albini* (1972), 31 Ohio St. 2d 27, where it held:

"Where, incident to a lawful arrest upon a charge of exhibiting an obscene motion picture film, a single copy of the film is seized as evidence to be used in support of the charge, the fact that, prior to its seizure, no adversary hearing had been held upon the question of the obscenity of the film does not require reversal of a conviction for its unlawful exhibition."

We find this case decisive of the issue of prior adversary hearing, and as it is consistent with the holdings of the United States Supreme Court we are not in the position of following a decision of the Ohio Supreme Court in the face of a different decision on the same issue by the United States Supreme Court.

Defendant further contends, however, that the search warrant was insufficient because the affiant "did not see personally the trailer 'Starlet' before its 'confiscation' and relied on the hearsay information received from two informants." Admittedly the affiant who obtained the search warrant was not prior to executing his affidavit a witness to the showing of the film trailer in question and his affidavit contained the following with respect to his informants:

"Affiant further avers the facts upon which such belief [the concealment of the obscene movie trailer] is bas-

ed are: information received from E. L. Stringfield, 3364 Allentown Road, Lima, Ohio, that he had viewed an exhibition of a motion picture film trailer on September 13, 1969 and that said film was in color and showed a nude woman with the private parts of her body exposed; that said film depicted a nude couple engaged in sexual relations and that said film showed a nude female committing an act of oral sodomy upon a nude male.

"Affiant further says that the facts on which belief is based, is information received from Paul Jackson, Bath Township Constable; that he has viewed exhibitions of said motion picture film trailer of the moving picture 'Starlet' on several occasions prior to September 13, 1969; that said motion picture film trailer is in color; that its exhibition lasts approximately seven (7) minutes on the screen; that it depicts a nude male and female engaged in the act of sexual intercourse; that it depicts an act of oral sodomy performed by the nude female and that the nude female appears with her pubic area and other private parts of her body fully exposed; that said motion picture film trailer is contained in a metal container designed for the purpose of storing said film and was seen by the said Paul Jackson in the projection room of the Springbrook Drive-In Theater on or about September 13, 1969."

*State* v. *Joseph,* 25 Ohio St. 2d 95, sets forth the criteria for the sufficiency of Ohio search warrants as tested against federal constitutional standards regarding probable cause prescribed by the United States Supreme Court. The Ohio Supreme Court concluded that the test which we are bound to apply is set forth in *Aguilar* v. *Texas* (1964), 378 U. S. 108, 114-115:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observation of the affiant, *Jones* v. *United States,* 362 U. S. 257, the magistrate must be informed of (1) some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and (2) some of the underlying circumstances from which the officer concluded that the informant, whose identity need

not be disclosed, see *Rugendorf* v. *United States*, 376 U. S. 528, was 'credible' or his information 'reliable'. * * * "

Although there is nothing in the paragraph in the affidavit referring to informant Stringfield to identify the film trailer by name or to show where he had viewed its exhibition, the paragraph in the affidavit relating to informant Jackson not only shows the character and identity of the film trailer and where it had been seen and kept, but identifies Jackson as a "Bath Township Constable", a person whom the magistrate as well as the affiant could conclude would be credible in the observations which were related as being made by him and whose information in such respect would be reliable. The affidavit meeting the standards set forth in *Aguilar* we need not be, and are not, concerned with the defendant's claim that the affiant did not personally see an exhibition of the film trailer before seizing it.

Concluding that the search warrant affidavit was sufficient and that no prior adversary hearing as to the obscene character of the film trailer was necessary we also conclude that the defendant has not shown any illegality in the search and seizure. That being the case, it follows that the required production of the film by virtue of a subpoena duces tecum was not in any manner violative of defendant's rights.

*Assignment of Error No. V.* "The trial court erred in overruling appellant's motion to quash the indictment since the indictment does not afford a record whereby the appellant could successfully assert a plea of double jeopardy."

This assignment refers to a claimed absence from the indictment of a grand jury finding of obscenity, or of any of the elements constituting obscenity, and an absence therefrom of any name or identification of the motion picture film involved.

Each of the counts of the indictment following the language of the statute and the second count thereof relating to possession (R. C. 2905.34) is further qualified by the language indicated by the requirements set forth in

*State* v. *Ross,* 12 Ohio St. 2d 37. It is the general rule that an indictment in the language of the statute creating and defining the offense on which the prosecution is based is sufficient. In view of the language actually used in the indictment it cannot be reasonably contended that the grand jury failed to find that the film involved was obscene. Finding the whole, it was not necessary for it then to find the separate elements of obscenity.

The claim that the form of the indictment would deprive the defendant of a future plea of double jeopardy has no validity for under the provisions of R. C. 2943.06, the issue of former jeopardy "shall be tried to a jury, and on such trial the defendant must produce the record of such conviction, acquittal, or jeopardy, and prove that he is the person charged in such record, and *he may also introduce other evidence to establish the identity of such offense.*" (Emphasis added.) This statute adequately protects the defendant against the problem which he envisages arising from the failure of the indictment to more fully identify the movie trailer.

*Assignment of Error No. I.* "The court erred in finding the motion picture trailer 'Starlet' obscene."

Under this assignment the defendant claims that the scenes shown in the subject film trailer are indistinguishable from the types of photography found to be protected by numerous decisions of the United States Supreme Court. When one considers the descriptions of the textual matter in books, of scenes depicted in photographs, and of the content of films, involved in cases where the Supreme Court of the United States has reversed obscenity convictions obtained in state courts it is difficult to know what is and what is not obscene in the view of the Supreme Court of the United States.

Although in September, 1969, the time of the occurrences from which arose the matters for which the defendant stands charged, there was no statutory definition of obscenity existing in Ohio, the Ohio Supreme Court had, nevertheless, arrived in the case of *State* v. *Mazes,* 7 Ohio St. 2d 136, at its own definition based on the definition set

forth and agreed to by a minority of the United States Supreme Court in the case of *A Book* v. *Attorney General of Massachusetts* (1966), 383 U. S. 413, 86 S. Ct. 975, at least with application to the obscenity of books. That definition arrived at by the Ohio Supreme Court was:

"In order that a publication may be held to be in violation of Section 2905.34 of the Revised Code, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

It must be recognized, however, that in the federal constitutional area involving the freedoms of speech and freedom of the press any definition of obscenity by a state court must yield to the decisions of the Supreme Court of the United States relating to such constitutional rights. But neither in *A Book* v. *Attorney General of Massachusetts,* *supra,* nor in any other case has a majority of the Supreme Court settled upon one definition of obscenity. See *Requiem for Roth,* 69 Mich. L. Rev. 185, and *Sensenbrenner* v. *Adult Bookstore,* 26 Ohio App. 2d 183, 189. It must be concluded from the consistent and controlling application by the court of the case of *Redrup* v. *New York,* 386 U. S. 767, 87 S. Ct. 1414, in finding constitutional protection under the First and Fourteenth Amendments to the Constitution of the United States of books, photographs, and films at least as offensive as the film herein involved, that whether the material constitutes hard core pornography, or not, the distribution or exhibition of same is protected by these amendments unless (1) the statute in question in its application to the offense charged reflects a specific and limited state concern for juveniles or (2) there is suggestion of an assault upon individual privacy by publication in a manner so obstrusive as to make it impossible for an unwilling individual to avoid exposure to it, or (3) there is evidence of the sort of "pandering" which the

Court found significant in *Ginzburg* v. *United States*, 383 U. S. 463, 86 S. Ct. 942. Thus, although a book, photograph or film might be considered obscene under the definition set forth in *State* v. *Mazes, supra,* it could be still constitutionally protected if the offense charged did not involve one or more of the exceptions set forth in the *Redrup* case.

Having viewed the film trailer "Starlet" and reviewed the rest of the record, we are of the opinion that there was sufficient evidence of probative value to prove the film obscene under the three prong test set forth in *State* v. *Mazes, supra,* and alluded to in *Redrup* v. *State of New York, supra.* The record will not support a conclusion by this court, as a matter of law, that the film trailer was not obscene, as so defined. The film being obscene, are the offenses charged then within any of the exceptions to the operation of the *Redrup* case?

R. C. 2903.11, the statute under which the first count of the indictment was founded was amended as part of an act "relative to the dissemination of obscene matter to minors" (130 Ohio Laws 658, Amended Senate Bill No. 115) and is directed specifically and solely to prohibiting such dissemination. It therefore reflects a specific and limited state concern for juveniles.

The offenses under both counts of the indictment occurred by the exhibition of the film trailer without warning to the entire theater audience at a time and under circumstances when it could be expected that they would be looking; indeed, under circumstances, the advertising of a coming attraction, where the defendant wanted them to be looking. The audience not being forewarned of what was going to be shown the publication of the film was in a manner so obtrusive as to make it impossible for any unwilling individual in the audience to avoid exposure to the film.

In *Ginzburg* v. *United States*, 383 U. S. 463, 467, 86 S. Ct. 942, 945, the Supreme Court defines pandering in terms set forth in *Roth* v. *United States*, 354 U. S. 495, 496, 77 S. Ct. 1314, 1315, as "the business of purveying textual or graphic matter openly advertised to appeal to the erotic

interest of their customers." That case involved the question of the obscenity of a hardcover magazine, a bi-weekly newsletter and a short book and convictions for the violation of the federal obscenity statute were upheld in view of the defendant's pandering in their production and sale. Here, the question is not whether the full length movie "Starlet" was obscene because of the presence of pandering but merely whether the advertising therefor, the film trailer "Starlet", was obscene. Although the trailer may have constituted pandering for the movie, the element of pandering was not present as to the trailer.

We conclude that the prohibited conduct, as to each count of the indictment, came within at least one of the categories set forth in the *Redrup* case excepting the film from the constitutional protections recognized by that case. The trial court did not err, therefore, in finding the motion picture trailer "Starlet" (legally) obscene. Compare, *State, ex rel Keating,* v. *Vixen,* 27 Ohio St. 2d 278.

*Assignment of Error No. IV.* "The record is totally devoid of any evidence showing: (1) The obscenity of the motion picture trailer 'Starlet.' (2) That the defendant knew the film was obscene. (3) That the film introduced into evidence is the same film seized on September 17, 1969."

Under the first portion of this assignment the defendant claims that the television station program director offered by the State as an expert witness with respect to establishing community standards was not qualified as an expert. It is difficult for this court to conceive of how one becomes an expert on obscenity. Must he be an obscene person, must he be a person who has no tolerance for obscenity, or must he fall in the middle ground between these extremes? What educational or experience requirements are applicable? The determination of the qualifications of an expert witness is a matter for the trier of facts and rulings with respect thereto will ordinarily not be reversed unless there is a clear showing that the court abused its discretion. *Cities of Canton, etc.,* v. *Public Utilities Commission,* 87 S. Ct. 62, 385 U. S. 828 and *In re Ohio Turnpike*

*Commission*, 164 Ohio St. 377. The proffered expert was, as a program director, fully familiar with the film fare offered to the public by television stations both locally and nationwide and fully familiar with its acceptability to the public. We are of the opinion that the defendant has not shown a clear abuse of discretion by the trial court in admitting his opinion testimony.

The assertion by the defendant that the record is totally devoid of any evidence showing obscenity is not only not well taken because such expert testimony was admissible but also because the subject film trailer was evidence, in and of itself, of its obscenity.

As to the assertion that there is no evidence that the defendant knew the film was obscene, the evidence is fully sufficient to show that the defendant had knowledge of the content and character of the film from which it may be inferred that he knew that it was obscene as a matter of fact. There is no requirement that he be able to arrive at a conclusion that the same was obscene as a matter of law.

As to the identity of the film introduced into evidence it must be remembered, in the first place, that each of the counts with which the defendant was charged relates to the possession of an obscene film. There is no requirement in law that the particular film possessed must be produced in court to prove the commission of the crimes. Indeed if there is other evidence to prove the elements of the crimes it is conceivable that the charges could be proved without the production of any film, subject only to the best evidence rule which is based primarily on the matter of availability. Although the evidence adduced would have supported an inference that the film produced in evidence was the same film as that which was the subject matter of the charges, the important thing here is not such identity but that the film produced in evidence shows identically the same things that were shown by the film which was the subject matter of the charges and thus tends to be proof, in this case conclusive, of its content. The record was replete with evidence of such identity and defendant's claim is without merit.

Having found no error prejudicial to the defendant in any of the particulars assigned and argued the judgment of the trial court must be affirmed.

*Judgment affirmed.*

YOUNGER, P. J., and COLE, J., concur.