**Myron M. AMATO, Petitioner,**

v.

**Archie H. DIVINE, Jr., Sheriff of Rock County, Wisconsin, Respondent.**

**Jack L. ROCKEY, Petitioner,**

v.

**Archie H. DIVINE, Jr., Sheriff of Rock County, Wisconsin, Respondent.**

**Nos. 72–C–281, 72–C–282.**

United States District Court,
W. D. Wisconsin.

Feb. 22, 1973.

**806**

James A. Walrath, Milwaukee, Wis., for petitioners.

Thomas J. Balistreri, Asst. Atty. Gen., Madison, Wis., for respondent.

## OPINION and ORDER

JAMES E. DOYLE, District Judge.

These are two petitions for writs of habeas corpus by petitioners convicted in a state court for the sale of obscene materials. Among the contentions which petitioners advance in support of the petition is that the materials for which they were convicted are, as a matter of law, not obscene. In support of this argument petitioners have submitted as evidence four magazines which the Supreme Court has held to be not obscene and which petitioners contend are similar to the magazines involved in the present case.

The parties have stipulated that the record of the state criminal proceedings may be received in evidence. The parties have also stipulated to certain facts. On the basis of the stipulation, the record of the state proceeding, and the matters admitted in the response to the petition, I find as fact those matters set forth under the heading "facts."

## FACTS

Petitioners were convicted in Rock County Court for violation of Wis.Stat. § 944.21(1)(a), which prohibits the sale of obscene materials. Prior to the trial both petitioners moved to dismiss the complaint on the ground, among others, that the materials which they were charged with selling were, as a matter of law, not obscene. The trial court denied those motions. At the trial the state proved that petitioner Rockey sold a publication titled *Honey Bun* to a police officer and that petitioner Amato sold the publications *Tulip Review* and *Heads Up* to police officers. The state did not attempt to prove that the petitioners sold or exhibited the publications involved to minors, displayed the publications involved in a manner so obtrusive as to cause unwilling individuals to be exposed to the materials, or pandered any of the publications involved.

The judgments of conviction were entered on January 23, 1970. On the basis of his sales of *Tulip Review* and *Heads*

*Up* petitioner Amato was convicted on two counts; on Count I he was sentenced to pay a fine of $3,000, or in default thereof, to serve six months in the Rock County Jail; on Count II he was ordered to pay a fine of $2,000, or in default thereof, to serve 120 days in the Rock County Jail consecutive to the penalty in Count I. On the basis of his sale of *Honey Bun* petitioner Rockey was convicted and sentenced to pay a fine of $3,000, or in default thereof, to serve six months in the Rock County Jail.

Petitioners appealed to the Wisconsin Supreme Court raising, among other issues, the question whether the magazines involved are as a matter of law not obscene. The court affirmed the convictions, State v. Amato, 49 Wis.2d, 638, 183 N.W.2d 29 (1971), and denied petitioners' motion for a rehearing. Subsequently petitioners filed petitions for a writ of certiorari in the United States Supreme Court. That Court denied the petitions on January 24, 1972, 404 U.S. 1063, 92 S.Ct. 735, 30 L.Ed.2d 751, and on February 15, 1972, denied petitions for rehearing, 405 U.S. 981, 92 S.Ct. 1190, 31 L.Ed.2d 257.

On August 7, 1972, Judge Farnum of the Rock County Court adjudged the petitioners to be in default of payment of their fines and ordered that they commence service of their jail sentences. On the same day petitioners filed their petitions for habeas corpus in this court along with a stipulation signed by the attorneys for each party that the petitioners be released on bond pending a final determination of their petitions for habeas corpus. In accordance with that stipulation this court entered an order on August 21, 1972, admitting petitioners to bail.

*Honey Bun,* the magazine for the sale of which Rockey was convicted, is a collection of photographs of young women who are either nude or are wearing stockings and garter belts. In most of the photographs the model's knees are spread, and the emphasis is on the pubic area, which is fully exposed.

Amato was convicted for selling *Tulip Review* (1969) and *Heads Up* (Pendulum Publishers, Inc., Los Angeles (Nov./Dec. 1969, Vol. 1, No. 1)). These magazines contain photographs of women similar to the photographs in *Honey Bun,* and also such photographs of women in physical contact with other women and in physical contact with partially dressed and nude men whose genitals are fully exposed. A number of the photographs portray sexual activity, with certain sexual contacts, both homosexual and heterosexual, such as mouth on buttock, hand on breast, hand on genitals, breast on breast, vagina on buttock. None of the photographs shows an erect penis, intercourse, fellatio, or cunnilingus, but many imply clearly from the juxtaposition of the parts of the bodies that intercourse, fellatio, or cunnilingus is about to occur. Both *Tulip Review and Heads Up* contain written material and captions; those in *Heads Up* are filled with vulgar terms for parts of the body and for sexual activity, and they strengthen the implication of the photographs as to the imminence of activity not explicitly shown.

Petitioners have submitted as evidence four magazines which the United States Supreme Court has determined as a matter of law to be not obscene. *Gigi* (1968 Tudor House Inc.) was held to be not obscene in Bloss v. Dykema, 398 U.S. 278, 90 S.Ct. 1727, 26 L.Ed.2d 230 (1970). *Togetherness* (1969 Tudor House Inc.) and *Flesh Fantasy* were held not obscene in Burgin v. South Carolina, 404 U.S. 806, 92 S.Ct. 46, 30 L.Ed.2d 39 (1971). *The Ballers, No. 1* (OBC) was held not obscene in Wiener v. California, 404 U.S. 988, 92 S.Ct. 534, 30 L.Ed.2d 542 (1971). The content of *Gigi* and of *Flesh Fantasy* is in no material way different from the content of *Honey Bun* (the magazine upon which Rockey's conviction is based), except for the occasional presence of a male in photographs in *Flesh Fantasy,* and except for the presence of written material in both *Gigi* and *Flesh Fantasy* on sexual themes. *Togetherness* is comparable to

*Tulip Review* and *Heads Up* (the two magazines upon which Amato's conviction is based), except that very few of the photographs in *Togetherness* involve sexual contacts. *The Ballers, No. 1* is not materially different from *Tulip Review* and *Heads Up*: the same sexual activity and the same types of sexual contacts appear in *The Ballers* as appear in the latter two magazines, with the same omissions, except that *The Ballers* contains what purports to be an advertisement of yet another publication, which advertisement contains a number of pictures of sexual intercourse between a male and a female, and except that the written material in *The Ballers* is somewhat less explicit than that in *Heads Up*.

## OPINION

Jurisdiction is present. 28 U.S.C. § 2241. Petitioners have exhausted the remedies available to them in the state courts.

Petitioners contend that the magazines for which they were convicted are as a matter of law not obscene, and that, therefore, they are in custody in violation of the first and fourteenth amendments to the federal constitution. Since I have concluded that petitioners are entitled to relief on this claim, I need not consider the other contentions which they advance.

The Supreme Court undertook to define obscenity in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). In a subsequent opinion the Court described the *Roth* test as follows:

> Under this definition . . . three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.

Memoirs v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

In several recent decisions, the Court reaffirmed the *Roth* standards. Kois v. Wisconsin, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972); United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971).

In Redrup v. New York, 386 U.S. 767 (1967), 87 S.Ct. 1414, 18 L.Ed.2d 515 the Court entered a *per curiam* opinion reversing two criminal convictions and one civil proceeding, all relating to the distribution of obscenity. The opinion states: "We have concluded, in short, that the distribution of the publications in each of these cases is protected by the First and Fourteenth Amendments from governmental suppression . . . ." *Redrup, supra* at 770, 87 S.Ct. at 1416. The Court then set forth the various views of its members on the question of the state's power to regulate obscenity and concluded: "Whichever of these constitutional views is brought to bear upon the cases before us, it is clear that the judgments cannot stand." *Redrup, supra* at 771, 87 S.Ct. at 1416. Since that decision the Court has reversed twenty-nine obscenity decisions in *per curiam* orders which cite only Redrup v. New York. For example, in Wiener et al. v. California, 404 U.S. 988, 92 S.Ct. 534, 30 L.Ed.2d 542 (1971), which involved *The Ballers*, the order read: "Certiorari granted and judgment reversed. Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967)."

Each of the four magazines entered as evidence by the petitioners in the cases at bar is the subject of a *Redrup* reversal, and thus is material protected by the first amendment.

■ The question arises whether I may, and if I may whether I should, attempt to decide the present cases by comparing the publications involved in them with the publications which in

*Bloss, Burgin,* and *Wiener,* the Supreme Court of the United States held, as a matter of law, to be non-obscene. Respondent contends that I may not, for two reasons.

The first reason may be explained best by assuming that each of the present cases involved the very publication which the Supreme Court of the United States had held non-obscene in a *Redrup* reversal; and by assuming that the Supreme Court had expressly stated that the publication was not obscene because it failed to meet either the *Roth* test that the dominant theme of the material taken as a whole must appeal to a prurient interest in sex, or the *Roth* test that the material must be utterly without redeeming social value. On these assumptions, it seems clear to me that I would be bound by such a decision. However, assuming that the Supreme Court had not expressly stated that the publication failed to meet either of these two *Roth* tests, its determination of non-obscenity may have rested on a failure to meet only the third *Roth* test: namely, that the material must be patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters. If it was indeed this third *Roth* test which had been dispositive, then, respondent contends, I would not be bound by the Supreme Court's determination, nor would I be free to rely upon it, unless the "community" involved in the earlier case were identical in time and membership to the community involved in the present cases.

In fact, in the *Redrup* reversals, including *Bloss, Burgin,* and *Wiener,* the Supreme Court of the United States did not expressly reveal which of the *Roth* tests had not been met, and, in fact, the local communities involved in the *Redrup* reversals were other than the local community involved in the present cases.

I cannot accept respondent's contention. So far as I am aware, the Supreme Court of the United States has not made clear whether the "community" whose standards it has considered controlling is the national community or a smaller community. But even if it were assumed that the Supreme Court has been of the view that the community is a local community, a conviction reversal on the ground that the material was not patently offensive because it did not affront local community standards would have required the Supreme Court to conclude that the factual record did not support the lower court (judge or jury) finding that the local community standards were as they were found to be or to conclude that the factual record did not support the lower court finding that the material did affront those standards. It is simply not credible that in 29 cases, the Supreme Court of the United States undertook to set aside such lower court findings as unsupported in the record. It is inescapable that the *Redrup* reversals, including *Bloss, Burgin,* and *Wiener,* rested on one or more of these grounds: that as a matter of law, the dominant theme of the material taken as a whole did not appeal to a prurient interest in sex; that as a matter of law, the material was not utterly without redeeming social value; or that as a matter of law the material was not patently offensive because it did not affront the contemporary standards of the national community relating to the description or representation of sexual matters. A Supreme Court decision, on any one of those grounds, would clearly be binding upon me if the publication were the very publication involved in the case before me and if there were no significant time interval. *Bloss* was decided in 1970; *Burgin* and *Wiener* in 1971.

But this brings us to respondent's second reason for contending that I may not, or should not, apply *Redrup* reversal decisions to the present cases. It is argued, correctly, that none of the very publications presently before me is identical to any of those before the Supreme Court of the United States in *Bloss, Burgin,* or *Wiener.* It is argued further that every publication is unique and that a determination of non-obscenity, as a

matter of law, as to one cannot be controlling as to another. In many situations, I would consider the point well taken. *The Tropic of Cancer* is not interchangeable with *Ulysses*. However, the publications before me and those involved in *Bloss, Burgin,* or *Wiener,* fall into sets so readily identifiable, so standarized, that the comparison within the sets is similar to the comparison between two 1929 Model A Ford sedans or between two queens of hearts from two sets of playing cards produced in a single batch on a single day by a single manufacturer. For the trial court, and perhaps the intermediate appellate court, to refrain from engaging in this comparative process would be to decide that only the Supreme Court may engage in it, as the Supreme Court very clearly does. See the dissent of Mr. Justice Harlan in *Bloss,* 398 U.S. at 278, 90 S. Ct. 1727, 26 L.Ed.2d 230. I perceive no practical reason why the comparative process should be postponed until the case is acted upon by the Supreme Court, if it ever is. On the contrary, the resolution of litigation is expedited when the comparative process is engaged in by the trial court. An unseemly judicial process it surely is. But no more so when engaged in by the trial court than by the Supreme Court, and perhaps less so. In any event, the judicial unseemliness is the hallmark of all obscenity litigation. I think that the unseemliness will not end until the Supreme Court of the United States abandons its prevailing view that there are forms of expression which do not enjoy the protection of the First Amendment because they are "obscene."

The comparative process has been engaged in by other federal courts. Hunt v. Keriakos, 428 F.2d 606 (1st Cir.), cert. denied, 400 U.S. 929, 91 S.Ct. 185, 27 L.Ed.2d 189 (1970); Childs v. Oregon, 300 F.Supp. 649 (D.Or.1969), rev'd 431 F.2d 272 (9th Cir.), rev'd. 401 U.S. 1006, 91 S.Ct. 1248, 28 L.Ed.2d 542 (1970); United States v. Pinkus, 333 F.Supp. 928 (C.D.Cal.1971). Some courts have engaged in it, using judicial descriptions of those materials rather than exhibits consisting of the materials themselves. *See, e. g.,* United States v. Treatman, 453 F.2d 410 (6th Cir. 1972); Spinar v. United States, 440 F.2d 1241 (8th Cir. 1971); Orito v. Powers, 347 F.Supp. 150 (E.D.Wis.1972).

 For the reasons stated, I have concluded that the close similarity between the magazines approved by the Supreme Court of the United States and received in evidence in this case, and the magazines for which petitioners were convicted requires me to find that the latter magazines are not obscene as a matter of law. Since the distribution of those magazines is therefore protected by the first and fourteenth amendments, the conviction of petitioners was unlawful, and they are in custody in violation of the federal constitution.

Accordingly, it is hereby ordered that petitioners are hereby released from any and all obligations and restraints imposed upon them as a result of the judgments of conviction entered in Rock County Court on January 23, 1970, for violations of Wis.Stat. § 944.21(1)(a).